UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

REED GALIN,

       Plaintiff,                     15-CV-6992 (JMF)

  -against-

KUNITAKE HAMADA,

       Defendant.

------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
285 West Fourth Street
New York, New York 10014
212.633.0123
altmanlaw@earthlink.net
artesq@earthlink.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

POINT I:
THE EXHIBITS TO THE COMPLAINT SHOULD HAVE BEEN INCLUDED,
AND DEFENDANT'S EXHIBIT SHOULD BE EXCLUDED.. . . . . . . . . . . . . . . . . . . . . 1

POINT II:
THE U.C.C. ENTRUSTMENT PROVISION DOES NOT APPLY, BECAUSE
DEFENDANT DID NOT PURCHASE THE PAINTING FROM RAMUS... . . . . . . . . . . 3

POINT III:
EVEN IF IT DOES APPLY, THE ENTRUSTMENT DOCTRINE RAISES FACT
QUESTIONS AND CANNOT BE GROUNDS FOR DISMISSAL.. . . . . . . . . . . . . . . . . 5

POINT IV:
THE COMPLAINT STATES CLAIMS FOR AN EQUITABLE LIEN AND A
CONSTRUCTIVE TRUST... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION

TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES:**

*24 Art Holdings, LLC v Berry-Hill Galleries, Inc.*, 2014 N.Y.Misc. LEXIS 3562 (N.Y.Sup.Ct. Aug. 5, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brown v. Mitchell-Innes & Nash, Inc.*, 2009 U.S. Dist. LEXIS 35081, 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150 (2d Cir.2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991). . . . . . . . . . . . . . . . . . . . 2

*Davis v. Carroll*, 937 F.Supp.2d 390 (S.D.N.Y.2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Graffman v. Espel*, 1998 U.S. Dist. LEXIS 1339 (S.D.N.Y. Feb. 9, 1998). . . . . . . . . . . . . . . 4

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). . . . . . . . . . . . . . . . . 11

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . 3

*Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381, 2005 U.S. Dist. LEXIS 25471 (S.D.N.Y. Oct. 31, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Joseph P. Carroll Ltd. v. Baker*, 889 F.Supp.2d 593 (S.D.N.Y.2012). . . . . . . . . . . . . . . . . . . 8

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Dev. Fund Co.*, 608 F.2d 28 (2d Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATE CASES:**

*Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919). . . . . . . . 11

*Frelinghuysen Morris Foundation v. AXA Art Ins. Corp.*, Index No. 603015/09 (Sup. Ct. N.Y. Co., Oct. 18, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kozar v. Christie's, Inc.*, 109 A.D.3d 967 (2d Dept.2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Porter v. Wertz*, 53 N.Y.2d 696 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10

**FEDERAL STATUTES AND RULES:**

Rule 10(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

**STATE STATUTES:**

U.C.C. § 2-103(1)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.C.C. § 2-403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 9, 10

Plaintiff's attorneys, Law Office of Richard A. Altman, submits this memorandum of law in opposition to defendant's Rule 12(b)(6) motion to dismiss the complaint. The basic flaw in defendant's motion is that it fails to assume that everything stated in the complaint is true. Rather, it raises, and attempts to resolve, unknown, disputed and complex facts–going back over twenty-five years–solely in defendant's favor. This is not the function of a Rule 12(b)(6) motion.

The complaint sets forth two claims and pleads sufficient facts–not legal conclusions–to support those claims. The outcome of this case depends on significant factual issues which cannot be resolved without discovery. The case law in this area is completely fact-dependent. Defendant cites no case–and plaintiff has found none–which dismisses a claim like the present one on a pre-discovery motion directed to the complaint. The motion should be denied.

## POINT I

### THE EXHIBITS TO THE COMPLAINT SHOULD HAVE BEEN INCLUDED, AND DEFENDANT'S EXHIBIT SHOULD BE EXCLUDED.

There are two preliminary procedural issues. First, defendant fails to attach to his papers the entire complaint, including its exhibits. Those exhibits are an integral part of the complaint for all purposes, Rule 10(c), and his unexplained omission of them is highly prejudicial. In response, plaintiff submits a declaration herewith which annexes the entire complaint, including its eight exhibits, so that the Court has the entire complaint before it on this motion.

Conversely, in violation of proper procedure under Rule 12(b)(6), defendant annexes a document which was *not* part of the complaint (Cahill decl., Exh. 2). This document purports to be an invoice or bill of sale, although it does not identify in any way the painting at issue here, Ice Storm by Andrew Wyeth ("the Painting"). It was neither referred to nor relied upon in the

complaint. Plaintiff was previously unaware of its existence and therefore could not have made reference to it. Under those circumstances, it must be excluded. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir.2001); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991).

Even if it were to be considered, it raises more questions than it answers. The document refers to two "Illustrated Books," a "National Museum of Modern Art Exhibit" and an "A. Wyeth Art Collection Book." But it does not identify the Painting, and it does not appear to be a bill of sale from a seller to a buyer. Without a declaration from someone with knowledge explaining this document (which would be inadmissible on this motion anyway), it proves nothing, and certainly not the proposition that defendant advances, namely that he bought the Painting for 63 million Yen on December 15, 2013. Therefore, the status of defendant's title, the price he paid and when he paid it–and thus whether he was a good-faith purchaser, and what his rights may be–are also presently unknown. If anything, the document casts doubt on his status.

The document is dated May 18, 2015 and is directed to Christie's, so it is not a copy of a bill of sale. This is three days before the auction sale, which took place on May 21, and was just six days *after* plaintiff first told Christie's of his claim to the Painting on May 12 (Complaint, Exh. G). Presumably, Christie's demanded this document from the defendant after learning of plaintiff's claim, and it was intended to assure them that defendant actually had title to the Painting which Christie's was about to sell on his behalf. But by its own terms, it does no such thing, and it thus placed Christie's on notice that there was a potential red flag in its title.

Also, it directly contradicts the provenance in the auction catalog, which says that the present owner acquired it in 1995 ( Complaint, ¶ 69 at 11; Exh. H at 2), and that Christie's had sold the very same painting to Ramus in 1989. Thus, both Christie's and the defendant were well aware that this Painting had passed through Ramus's hands, and certainly by 2015 no one involved in the art world could claim ignorance of Ramus's crimes. Consequently, any potential purchaser of a work which had his name on the provenance was on notice of many "red flags."

Whatever may be the truth behind these contradictory facts, what defendant (and Christie's) knew, when they knew it, and what, if anything, they did with this information, cannot be determined in the present motion. We do not even know whether he is an art dealer himself,[1] nor is it certain that he is the "present owner" referred to in the provenance. What is certain is that these factual issues cannot be untangled on a Rule 12(b)(6) motion. The motion should be denied and the case should proceed to discovery.[2]

## POINT II

### THE U.C.C. ENTRUSTMENT PROVISION DOES NOT APPLY, BECAUSE DEFENDANT DID NOT PURCHASE THE PAINTING FROM RAMUS.

Defendant's principal argument is that U.C.C. § 2-403 provides a complete defense to plaintiff's claims, and that because of it, Ramus automatically conveyed title to Coe-Kerr, and

---

[1] An internet search on Mr. Hamada's name discloses no art dealer in Japan with that or a similar name, or indeed anything about him at all.

[2] Defendant also cites to published materials and websites which are not contained or referred to in the complaint, *see, e.g.*, Memo n. 5 at 5, n. 7 at 6. But those materials are not properly the subject of judicial notice, and cannot be considered now. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995). Only the complaint and its exhibits are properly before the Court on this motion.

then to him.  Apart from the question of the effect of any transactions which took place after Coe-Kerr's purchase and before Mr. Hamada's (which are unknown at this point), he is incorrect, and the case upon which he relies demonstrates it:

> Subdivision (2) of section 2-403 of the Uniform Commercial Code provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."  The "entruster provision" of the Uniform Commercial Code is designed to enhance the reliability of commercial sales by merchants (who deal with the kind of goods sold on a regular basis) while shifting the risk of loss through fraudulent transfer to the owner of the goods, who can select the merchant to whom he entrusts his property. *It protects only those who purchase from the merchant to whom the property was entrusted in the ordinary course of the merchant's business.* Porter v. Wertz, 53 N.Y.2d 696, 698 (1981)(emphasis added).

At this point, we do not know who sold the Painting to Mr. Hamada, or indeed anything at all about the transaction.  But we do know that he did not purchase it either from Ramus or from Coe-Kerr.  Thus, he cannot invoke the entrustment doctrine to prove the validity of his title, because U.C.C. § 2-403(4) does not apply to this case. *See Kozar v. Christie's, Inc.*, 109 A.D.3d 967, 968 (2d Dept.2013)(appellants were not good faith purchasers, and could not invoke U.C.C. § 2-403, because "the appellants did not purchase the subject painting from the 'merchant to whom the property was entrusted,'"*citing Porter, supra*).  *See also Graffman v. Espel*, 1998 U.S. Dist. LEXIS 1339, *11-12 (S.D.N.Y. Feb. 9, 1998)(*citing Porter*; "[o]nly the merchant to whom the goods are entrusted is entitled to the protection of § 2-403.").

Moreover, the rights transferred by an entruster cannot exceed the rights which he may have had at the time.  The statute says "all rights of the entruster," whatever those may be, but no more than those rights.  But at the time that Ramus sold the Painting to Coe-Kerr, plaintiff was entitled only *to one-third of the proceeds* from the sale, and did not have full and unencumbered

title to convey (Complaint, ¶ 20 at 4, Exh. A). Whatever rights plaintiff may have acquired after Ramus's conviction, imprisonment and bankruptcy may be, in 1989 he was only entitled to one-third, as part of his share in the joint venture agreement which he, Ramus and Sentell had made. Moreover, the agreement between them did not permit a sale without plaintiff's consent. The determination of what rights he had after the criminal trial and the bankruptcy is not presently before the Court, and defendant's arguments about those rights are misplaced. The issue, even under defendant's interpretation, is solely what rights, if any, he conveyed to Ramus, and what Ramus had the power to convey. Those rights cannot be determined at this point.

Thus, even if the entrustment doctrine were to apply to Ramus's sale to Coe-Kerr, it could only transfer plaintiff's one-third interest, because at the time *that was all he owned*. The doctrine permits the transfer of all rights of the entruster, but it cannot be interpreted so as to convey more rights than he has. Second, the entrustment doctrine does not protect the defendant here, because he did not purchase the Painting from Ramus or from Coe-Kerr. Therefore U.C.C. § 2-403 does not apply and defendant cannot invoke the entrustment doctrine. He must therefore prove the validity of his title without invoking this statute.

## POINT III

### EVEN IF IT DOES APPLY, THE ENTRUSTMENT DOCTRINE RAISES FACT QUESTIONS, AND CANNOT BE GROUNDS FOR DISMISSAL.

Even if the entrustment doctrine of U.C.C. § 2-403 applies, defendant's principal argument, that the statute bars this action as a matter of law, is flatly wrong. This is supposedly because, as an art merchant, Ramus had the right to pass good title, regardless of his larcenous intent and actions. Defendant cites *Porter v. Wertz, supra* to support his position. But in *Porter*,

both the Appellate Division and the Court of Appeals held in favor of the true owner after a full trial. No case has been found which dismissed a complaint solely because of this statute, as a matter of law, without any factual basis. The reason is obvious, because the issues which arise under U.C.C. § 2-403 are necessarily factual ones. Among the many questions which must be answered before it can be established that the statute applies to this case (even assuming that it does) are:

    1. Was the Painting "entrusted" to Ramus, within the meaning of U.C.C. § 2-403(3)?

    2. Was the Coe-Kerr Gallery a good-faith purchaser?

    3. Were there any "red flags"?

    4. What level of due diligence was required of the defendant, and how did he exercise that obligation?

The question of the dealings between Ramus and Coe-Kerr, and the knowledge of defendant as to his purchase of the Painting, are essentially factual. They go to the merits of plaintiff's claims and his right to ultimately recover the proceeds, but not whether he has stated claims. Therefore, even if the statute applies, it cannot be a basis to dismiss this action.

In a recent case on similar facts, the Court said:

> The news articles submitted by Plaintiff are sufficient for purposes of pleading to state a claim that red flags should have alerted Bluestein. They reported that the Gallery had financial difficulties, had sold works without authorization, had sold pledged artwork and engaged in other sharp practices. Whether Bluestein read the articles, whether the Maine Digest is a publication in "widespread" circulation, and whether art merchants should have read the articles submitted are factual issues that cannot be resolved at this stage and will benefit from disclosure. While Bluestein argues that the red flags did not alert Plaintiff, who entrusted its art investments to the Gallery and its principals for years, both before and after the bankruptcy, *that goes to the credibility of Plaintiff's claim, not whether one is stated*... Factual

issues as to whether Bluestein's transaction was in good faith and it bought the Paintings in the ordinary course mandate denial of the motion to dismiss the replevin claim.
*24 Art Holdings, LLC v Berry-Hill Galleries, Inc.*, 2014 N.Y.Misc. LEXIS 3562, *13-15 (N.Y.Sup.Ct. Aug. 5, 2014)(emphasis added).

This is the only case found in which a defendant invoked U.C.C. § 2-403 on a motion to dismiss, as opposed to summary judgment or upon a trial, and the motion was denied (except for a minor claim under the New York Debtor and Creditor Law). Whether someone is or is not a good-faith purchaser, and whether someone acted in good faith or was alerted by red flags, are purely factual questions, and cannot be determined on a motion to dismiss.

There are specific factual allegations in the complaint as well; they are not merely conclusory. See, for example, ¶¶ 36-38 at 6, describing Ramus's transfer of the Painting to Coe-Kerr, ¶ 43 at 7, describing the indictment against Ramus, the many news stories about him (Exh. E), and the fact that Ramus's name was in the Christie's provenance, ¶ 69 at 11. All of these are questions of fact which determine whether plaintiff "entrusted" the Painting to Ramus, whether Coe-Kerr was a good-faith purchaser under the heightened standard applicable to art merchants, and whether there were red flags which required investigation by the defendant before paying (according to him) in excess of $600,000 for the Painting.

As the Court in *Graffman v. Espel, supra,* explained:

Whether there has been an entrustment is normally a question for the factfinder....Merchants are held to a higher standard of good faith than other purchasers...Whether the Avanti Defendants met the reasonable commercial standards of the art industry is a question for the trier of fact. Whether the standards of the art industry required the Avanti Defendants to make an inquiry into the provenance of the Painting is also a question for the trier of fact. If the trier of fact were to determine that reasonable commercial standards require an investigation into provenance only when there are warning signs the questions of

whether there were warning signs, and what degree of investigation was reasonable, are factual inquiries. Thus, there are questions of fact as to whether the Avanti Defendants acted in good faith and are entitled to the protection of Section 2-403.
1998 U.S. Dist. LEXIS 1339 at * 13-14.

It is thus essential that plaintiff be entitled to discovery from the principals of Coe-Kerr Gallery, Christie's and from defendant himself. The exhibits annexed to the complaint are sufficient to show the existence of "red flags," but the question whether Coe-Kerr or the defendant (or both) knew about them, or should have known about them, cannot be determined as a matter of law at this point one way or the other. This is not an unduly difficult task. As defendant himself points out, the records of the Coe Kerr Gallery, which closed in 1993, are archived at the Frick Collection and the Museum of Modern Art.[3] Therefore, the records of the transaction at issue here are likely to be available.

Defendant cites two cases which involved sales by the notorious Lawrence Salander, to show that they fell within the entrustment doctrine, thereby barring defrauded sellers from recovering their paintings. The cases are *Joseph P. Carroll Ltd. v. Baker*, 889 F.Supp.2d 593 (S.D.N.Y.2012) and *Frelinghuysen Morris Foundation v. AXA Art Ins. Corp.*, Index No. 603015/09 (Sup. Ct. N.Y. Co., Oct. 18, 2013). But both cases were determined only after full discovery, not on a motion to dismiss. In the *Baker* case, the Court held a three-day trial with testimony from parties and experts and carefully analyzed all of the evidence. In *Frelinghuysen*, a decision on a summary judgment motion, the main issue was whether the plaintiff retained an insurable

---

[3] See http://research.frick.org/ directoryweb/browserecord2.php?-action= browse&-recid=6344#Coe and http://arcade.nyarc.org/record=b691708~S1 (accessed October 26, 2015).

interest in paintings after entrustment, but not whether he could recover the paintings themselves. That Court said that "[e]ven if plaintiff somehow retained the right to challenge any of these buyers' title to the works of art, that is not an 'insurable interest' as defined in the Policy." (Cahill decl., Exh. 3 at 17). Thus neither case is relevant to the present motion.

Defendant also cites *Brown v. Mitchell-Innes & Nash, Inc.*, 2009 U.S. Dist. LEXIS 35081, 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009), to support its argument that he was a good-faith purchaser. But it is unclear at this point whether he is a merchant–and thus held to the higher standard–or just a buyer in the ordinary course of business. Defendant cannot have it both ways, and without discovery as to his conduct with respect to the purchase of the Painting, the truth cannot be known at this point.

Far more relevant here is *Davis v. Carroll*, 937 F.Supp.2d 390 (S.D.N.Y.2013), which also involved artworks sold by Salander. *Davis* was a summary judgment motion in which the Court ruled that, notwithstanding U.C.C. § 2-403, plaintiff was entitled to recover eight works which had been created by his father, Stuart Davis, and unlawfully sold by Salander to Carroll. In a lengthy and thorough opinion, Judge Oetken set out many holdings and issues which are relevant to the present case. In particular, among the issues here are (1) whether plaintiff "entrusted" the Painting to Ramus; (2) whether Coe-Kerr qualified as a "buyer in the ordinary course of business;" (3) whether Coe-Kerr acted in accordance with the higher standard of "good faith" applied to merchants under U.C.C. § 2-103(1)(b), which means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade," (4) whether

defendant is a merchant or a buyer in the ordinary course of business, (5) the extent of his obligation of due diligence and whether he met that obligation.

The Court in *Davis* said:

> [T]o prevent lackadaisical standards in the art business from affording a shield to either misconduct or fraud-conducive indifference, New York courts will not allow a buyer who conducts trivial due diligence to insist that failure to look into [a merchant's] authority to sell [a] painting was consistent with the practice of the trade. After all, it is precisely such commercial indifference to ownership or the right to sell [that] facilitates traffic in stolen works of art…Thus, under New York law, [c]ompliance with custom is relevant but not dispositive because a customary practice might fall short of what a reasonable commercial standard would require for fair dealing…Rather, in New York, [a] merchant…might be required under the U.C.C. to take additional steps to verify the true owner of a piece of artwork. This heightened duty of due diligence is triggered where there are warning signs about problems in a sale.
> 937 F.Supp.2d at 423 (citations and quotation marks omitted; brackets in original).

*See Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381, 2005 U.S. Dist. LEXIS 25471, at *13 (S.D.N.Y. Oct. 31, 2005)("Many lower courts have held that to be a purchaser in the ordinary course within the meaning of § 2-403 an art dealer must investigate the provenance of a work of art being purchased, even if the work is being purchased honestly and from a reputable dealer.")(citing cases). This view of a purchaser's obligation was approved in *Davis, supra*, 937 F.Supp.2d at 424 n. 17: "This is the better reading of *Porter* [*v. Wertz*] for two reasons. First, *Porter*'s analysis of the due diligence duty is properly understood as an alternative holding—one to which that court plainly gave deep thought. Second, given that this Court must apply New York law, *Porter* offers the clearest statement by a New York court on the applicable policies and doctrine."

Plaintiff's rights to the Painting were unquestionably violated by Ramus and Coe-Kerr. It is a complex factual question whether those rights were terminated or whether they still exist, and that question cannot be determined now as a matter of law. Accordingly, this motion to dismiss should be denied.

## POINT IV

### THE COMPLAINT STATES CLAIMS FOR AN EQUITABLE LIEN AND A CONSTRUCTIVE TRUST.

The essence of this dispute is over entitlement to a fund created by the sale of the Painting, not over the Painting itself. By agreement of the parties, the proceeds of that sale are being held by Christie's, the auction house which sold it, and will be disbursed in accordance with the final ruling of this or an appellate Court. In such a case, the title to the painting determines the title to the fund. Under such circumstances, plaintiff has stated a claim for an equitable lien or a constructive trust over the proceeds.

An equitable lien is a common-law mechanism by which a plaintiff can enforce a claim against specific property, or the value of the property, wherever it may be found. A constructive trust is a means of imposing restitution where another's possession of property is proven wrongful, and the property rightly belongs to the plaintiff. In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court traced the historical division between law and equity, and said this about equitable liens and constructive trusts:

> [A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give

a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]...Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.
534 U.S. at 213-14 (citations and quotation marks omitted; brackets in original).

This language was quoted and applied in *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150 (2d Cir.2014). Both are long-standing creations at common law. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 37 (2d Cir.1979)("In the words of Judge Cardozo the 'equity of the transaction must shape the measure of the relief,' *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919)).

In this case, plaintiff is not seeking to impose personal liability on the defendant, but is asserting his claim to the proceeds solely from the sale of the Painting, as a particular identifiable fund, and to have those proceeds turned over to him. Under those circumstances, it follows that, if he demonstrates his title to the Painting, he is thereby entitled to the proceeds being held by Christie's. Whether that entitlement be deemed an equitable lien or a constructive trust, both claims are therefore legally sufficient, and the motion to dismiss should be denied.

## CONCLUSION

Based upon the foregoing, the defendant's motion should be denied, and the Court should direct him to file an answer to the complaint.

Dated: New York, New York
October 30, 2015

*[signature: Richard A. Altman]*

LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
285 West Fourth Street
New York, New York 10014
212.633.0123
altmanlaw@earthlink.net
artesq@earthlink.net