UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REED GALIN,

    *Plaintiff*,

-against-

KUNITAKE HAMADA,

    *Defendant*.

ECF CASE

15-CV-6992 (JMF)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Dated: 2015-November-13

**CAHILL PARTNERS LLP**

John R. Cahill
Ronald W. Adelman
Paul S. Cossu
70 West 40th Street
New York, NY 10018
(212) 719 – 4400

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................2

    I.    AS A MATTER OF LAW, GALIN'S INTEREST
        IN THE PAINTING WAS EXTINGUISHED IN 1989 ...............................................2

        A.    Galin's Conclusory Assertion
            Notwithstanding, He Entrusted the Painting to Ramus ....................................2

        B.    The Entrustment Doctrine is Irrelevant to
            All Transactions After the Purchase By the Coe Kerr Gallery.........................3

        C.    Galin's Argument That a Case Turning On an Entrustment Is Not
            Subject to a Motion to Dismiss Ignores the Relevant Authority ......................5

    II.   NONE OF THE REMEDIES GALIN SEEKS STATE
        CLAIMS UPON WHICH RELIEF CAN BE GRANTED...........................................8

CONCLUSION............................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                                       **Page**

*Art Holdings, LLC v. Berry-Hill Galleries, Inc.*,
2014 N.Y.Misc. LEXIS 3562 (N.Y. Sup. Ct. Aug. 5, 2014) .......................................................... 7

*Brown v. Mitchell-Innes & Nash, Inc.*,
No. 06 Civ. 7871 (PAC), 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009) .............................. *passim*

*Citizens Bank of Michigan City v. Hansom*,
497 N.E.2d 581 (Ind. App. 1986) ............................................................................................... 4

*Creggin Group, Ltd v. Crown Diversified Indus. Corp.*,
682 N.E.2d 692 (Ohio App. 1996) .............................................................................................. 3

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013) ........................................................................................ 7

*Goodwin v. Harrison*,
98 S.E.2d 255 (S.C. 1957) .......................................................................................................... 4

*Interested Lloyd's Underwriters v. Ross*,
No. 04 Civ. 4381, 2005 WL 2840330 (S.D.N.Y. Oct. 28, 2005) ................................................. 7

*Kozar v. Christie's, Inc.,*
Index No. 2010-30039, 2012 WL 9515210 (Sup. Ct. Westchester Co. Jan. 4, 2012) ............... 4, 5

*Kozar v. Christie's, Inc.*,
971 N.Y.S.2d 555 (2d Dep't 2013) .......................................................................................... 4, 5

*Labajo v. Best Buy Stores, L.P.*,
478 F. Supp. 2d 523 (S.D.N.Y. 2007) ........................................................................................ 3

*Mandarin Trading Ltd. v Wildenstein*,
16 N.Y.3d 173 (2011) ................................................................................................................. 8

*Podany v. Robertson Stephens, Inc.*,
350 F. Supp. 2d 375 (S.D.N.Y. 2004) ..................................................................................... 6, 7

*Porter v. Wertz*,
421 N.E.2d 500 (N.Y. 1981) .................................................................................................... 4, 5

*Prenger v. Baker*,
582 N.W.2d 805 (Iowa 1995) .................................................................................................. 3, 4

*Sharp v. Kosmalski*,
351 N.E.2d 721, 723 (N.Y. 1976) .................................................................................. 8

*Zaretsky v. William Goldberg Diamond Corp.*,
69 F. Supp. 3d 386 (S.D.N.Y. 2014) ........................................................................... 3, 8

## Statutes & Rules

Fed. R. Civ. P. 12 ........................................................................................................ 2, 5

N.Y. U.C.C. § 2-403 ................................................................................................ *passim*

Defendant Kunitake Hamada ("Hamada" or "Defendant") respectfully submits this Reply Memorandum of Law in further support of his motion, pursuant to Fed. R. Civ. P. 12(b), to dismiss the Complaint of Plaintiff Reed Galin ("Galin" or "Plaintiff").

**PRELIMINARY STATEMENT**

Following the submission of Hamada's moving papers, the Court, by Order dated September 30, 2015 (Dkt. No 12), gave Galin the option of filing an amended complaint or an opposition to the motion to dismiss. Galin chose the latter option, meaning that he is satisfied with the Complaint in its current form. However, Galin's Opposition Memorandum of Law ("Opp. Br.) actually underscores the defects in the Complaint that were highlighted in Hamada's Initial Memorandum of Law ("Initial Br.").[1] Crucially, Galin's Opposition Brief fails to address: (1) that Galin entrusted the Painting to Ramus for sale (Initial Br. at 4 (citing Complaint ¶ 23 and Ex. A)); (2) that Ramus sold the Painting to the Coe Kerr Gallery in exchange for *a more valuable painting* (Initial Br. at 4 (citing Complaint ¶ 36)); (3) that a bankruptcy court extinguished Galin's rights, to the extent they still existed, to the proceeds from the sale of the Painting (Initial Br. at 5, 15 (citing Complaint ¶ 41)); and (4) that there were no "red flags" cited in the Complaint that could have alerted the Coe Kerr Gallery that Ramus was less than trustworthy when it purchased the Painting in 1989 (Initial Br. at 12). On the contrary, the Complaint clearly states that there were no red flags of any kind until at least 1995. (Initial Br. at 12-13.) Accordingly, the Complaint itself provides the basis for dismissal under the governing law. The arguments in the Opposition Brief are simply window-dressing that fail to grapple with, let alone overcome, that fundamental fact. These arguments are addressed below.[2]

---

[1] This Reply Memorandum of Law adopts the capitalized terms defined in the Initial Br.

[2] The procedural issues raised in Point I of the Opposition Brief warrant only brief mention. Galin complains that Hamada failed to annex the exhibits to the Complaint with his moving

1

**ARGUMENT**

I.   **AS A MATTER OF LAW, GALIN'S INTEREST IN THE PAINTING WAS EXTINGUISHED IN 1989**

As noted, Galin's Opposition Brief does not address the key factual allegations in his own Complaint, let alone the legal significance of those allegations addressed in Hamada's Initial Brief. Rather, he throws several issues against the proverbial wall in the hope that something will be enough to stave of dismissal of the Complaint.

   **A.   Galin's Conclusory Assertion Notwithstanding, He Entrusted the Painting to Ramus**

In Point II of his Brief, Galin makes two intertwined assertions: (1) that UCC § 2-403 is inapplicable because that he did not entrust the Painting to Ramus; and (2) that even though an initial purchaser can obtain good title from a dishonest entrustee, that purchaser cannot ever subsequently pass good title. Both of these assertions are patently incorrect. For the sake of clarity, we will address the second one in Section I(B) below.

Galin appears to argue that Ramus could not have conveyed title in the Painting to the Coe Kerr Gallery because Galin could not have entrusted him with more than his one-third interest. (Opp. Br. at 4-5.) But he cannot dispute that he authorized Ramus to sell the Painting: the agreement between them (Complaint, Ex. A) provides that "David Ramus Fine Art shall

---

papers. His assertion that that was "highly prejudicial" (Opp. Br at 1) is specious. The Complaint (including exhibits) was filed publically on PACER on September 4, 2015, and presumably furnished to the Court by Galin through a courtesy copy soon thereafter. Galin, not surprisingly, fails to explain how he was prejudiced by the omission of documents (omitted for the sole purpose of saving trees) already in the Court's possession. Moreover, he fails to cite the provision of Rule 12(b) that Hamada allegedly violated. Hamada's inclusion of the bill of sale concerning the Work (**Exhibit 2** to the Declaration of John R. Cahill dated September 25, 2015) was warranted because Galin himself referenced the transaction in the Complaint (¶ 70). *See Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) (a complaint is deemed to include documents that are incorporated by reference, as well as those that were attached).

retain the painting and pursue its sale quoting a sale price of $550,000." Moreover, Ramus himself owned one of the other one-third interests, and Galin does not allege, even in conclusory fashion, that the final one-third owner, Don Sentell, in any way failed to consent to the entrustment. Accordingly, by the facts alleged in the Complaint, Ramus had full authority to convey the Painting to the Coe Kerr Gallery.[3]

### B. The Entrustment Doctrine is Irrelevant to All Transactions After the Purchase By the Coe Kerr Gallery

Galin argues that the purchase of the Painting by Hamada is suspect because he (concededly) did not purchase the Painting directly from Ramus or the Coe Kerr Gallery and therefore "cannot invoke the entrustment doctrine to prove the validity of his title . . ." (Opp. Br. at 4.) This argument demonstrates a fundamental misunderstanding both of Hamada's position and the governing law.

As stated in our Initial Brief (at 9):

> The key transaction was the sale by Ramus to the Coe Kerr Gallery in 1989. If title passed at that time, all subsequent sales are likewise valid, "with the consequence that the original seller cannot recover the goods from the subsequent purchaser." 3A ANDERSON U.C.C. § 2-403:56 (3d ed. 2014) (citing *Creggin Group, Ltd v. Crown Diversified Indus. Corp.*, 682 N.E.2d 692 (Ohio App. 1996)).

Galin's Opposition Brief ignores this point, which is central to the outcome of this case. Once a buyer (here, the Coe Kerr Gallery) takes good title pursuant to an entrustment, it is "free

---

[3] Galin asserts that his agreement with Ramus required his additional consent before the sale of the Work. (Opp. Br. at 4.) However, the written agreement between the two (Complaint Ex. A) has no such provision. The issue is in any event moot because, as we noted in the Initial Brief (at p. 13), "[e]ven when the sale violates a contract between the seller and the entrusted agent, the buyer is under no duty to demand to see the contract absent a clear indication that the agent has exceeded his authority." (citing *Brown v. Mitchell-Innes & Nash, Inc.*, No. 06 Civ. 7671, 2009 WL 1108526, *7 (S.D.N.Y. Apr. 24, 2009), and *Zaretsky v. William Goldberg Diamond Corp.*, 69 F. Supp. 3d 386, 387 (S.D.N.Y. 2014)).

3

to transfer its good title to any other buyers much the same as if it had been the original true owner." *Prenger v. Baker*, 582 N.W.2d 805, 809 n.1 (Iowa 1995). Once the purchaser in the position of the Coe Kerr Gallery takes good title, "those taking from them take clear of a pre-existing lien, ***even though they had notice of the interest claimed***." *Citizens Bank of Michigan City v. Hansom*, 497 N.E.2d 581, 585 (Ind. App. 1986) (emphasis added); *see also Goodwin v. Harrison*, 98 S.E.2d 255, 258 (S.C. 1957) ("'After property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser and is entitled to the same protection as the bona fide purchaser, ***irrespective of notice***, unless such purchaser was a former purchaser, with notice, of the same property prior to its sale to the bona fide purchaser.'") (emphasis added) (quoting 77 C.J.S Sales § 246). The highlighted portions of these authorities are particularly crucial, because they demonstrate that Galin's effort to cast aspersions on Hamada's purchase is not only factually incorrect, but legally baseless. We respectfully submit that Galin has failed to make a well-pleaded factual allegation that Hamada knew in 2013 that Ramus had acted unlawfully with respect to the Painting in 1989, but even if he did know, these authorities show that such awareness would not have invalidated his purchase of the Painting.

Accordingly, Hamada is neither "invok[ing]" nor relying on the entrustment doctrine to demonstrate the validity of ***his purchase***. Upon the good faith purchase by the Coe Kerr Gallery in 1989, title was "sanctified," *see Goodwin v. Harrison*, 98 S.E.2d at 258, and the entrustment to Ramus was rendered irrelevant to all subsequent transactions, including, but not limited to, Hamada's purchase. Galin's citation in this context (Opp. Br. at 4) to *Porter v. Wertz,* 421 N.E.2d 500 (N.Y. 1981), and *Kozar v. Christie's, Inc.*, 971 N.Y.S.2d 555 (2d Dep't 2013), is an attempt to compare apples to oranges. In *Porter v. Wertz*, the issue was whether an entrustment

4

to an art dealer named Harold Von Maker validated a purported sale of the work by an acquaintance named Peter Wertz, who worked in a delicatessen, when there had been no intervening transaction. 421 N.E.2d at 501. The factual discussion in the appellate opinion in *Kozar v. Christie's* is scant, but a review of the unreported trial court opinion, *Kozar v. Christie's, Inc.*, Index No. 2010-30039, 2012 WL 9515210, (Sup. Ct. Westchester Co. Jan. 4, 2012), demonstrates that the original owner entrusted the work in question to an art dealer, who then gave it away upon his retirement to another dealer. The Court held that that transaction was not a *bona fide* purchase for value and therefore that the second dealer could not pass good title to a subsequent purchaser. 2012 WL 9515210 at *9. In contrast, the facts pleaded in the Complaint here demonstrate that the sale to the Coe Kerr Gallery was a *bona fide* purchase for value.

### C. Galin's Argument That a Case Turning On an Entrustment Is Not Subject to a Motion to Dismiss Ignores the Relevant Authority

In arguing that there are factual issues that warrant denial of the motion to dismiss, Galin asserts that "[n]o case has been found which dismissed a complaint solely because of [UCC § 2-403], as a matter of law, without any factual basis." (Opp. Br. at 6.) This assertion is belied by a case cited several times in our Initial Brief: *Brown v. Mitchell-Innes & Nash, Inc.*, No. 06 Civ. 7671, 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009).[4] After denying the branch of the motion seeking dismissal due to lack of personal jurisdiction, the Court in *Brown* did precisely what Galin claims no Court has done: dismiss a complaint under Rule 12(b)(6) "because the allegations in the Amended Complaint show that the Defendants' purchase is entitled to the protection of the N.Y. U.C.C. § 2-403." *Id*. at *8. To be sure, many complaints implicating an

---

[4] Coincidentally, the undersigned attorneys represented the moving defendant in that case.

entrustment under § 2-403 are not subject to dismissal, but Galin's supposition that dismissal is never appropriate is simply incorrect.

Galin's position is rendered even more remarkable by the fact that he actually mentions the *Brown* decision (Opp. Br. at 9), albeit in a way that misunderstands both the decision and the reason for its relevance in this case. It bears on whether the Coe Kerr Gallery was a good-faith purchaser, not on whether Hamada was. For the reasons stated in the previous section, if the Coe Kerr Gallery obtained good title to the Painting, all subsequent purchasers did as well (at least insofar as Galin's extinguished title was concerned).

Galin identifies five "issues" which he claims present factual disputes dictating denial of the motion to dismiss:

> (1) whether plaintiff "entrusted" the Painting to Ramus; (2) whether Coe-Kerr qualified as a "buyer in the ordinary course of business;" (3) whether Coe-Kerr acted in accordance with the higher standard of "good faith" applied to merchants under U.C.C. § 2-103(1)(b), which means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade," (4) whether defendant is a merchant or a buyer in the ordinary course of business, (5) the extent of his obligation of due diligence and whether he met that obligation. [Opp. Br. at 9-10.]

However, it is readily apparent that all of these "issues" are either resolved by the Complaint or rendered irrelevant because of the Complaint. With respect to the first "issue," the Complaint (¶ 23 and Ex. A) states clearly that the Painting was entrusted to Ramus. To paraphrase the governing language of § 2-403(2), Galin did so simply by acquiescing in Ramus's retention of possession of the Painting. With respect to the second "issue," the Complaint demonstrates that the Coe Kerr Gallery acquired the Painting for at least fair-market value (if not more), and encountered no "red flags," which, the Complaint states, were not visible until at least 1995. (Complaint ¶¶ 36-45.) With respect to the third "issue," a merchant acts with good faith under the statutory definition when, as here, there are no "'red flags" that would create doubt in the

6

[merchant's] mind as to the propriety of the sale." *Brown*, 2009 WL 1108526, *7. The fourth and fifth "issues" are irrelevant, for the reasons stated above, in light of the Coe Kerr Gallery's acquisition of good title.[5]

None of the cases upon which Galin purports to rely provide a basis for sustaining his Complaint. The complaint in *Art Holdings, LLC v. Berry-Hill Galleries, Inc.*, as the quoted passage demonstrates (Opp. Br. at 6-7), alleged numerous published "red flags" that were accessible to the purchaser. 2014 N.Y.Misc. LEXIS 3562 (N.Y. Sup. Ct. Aug. 5, 2014). The Complaint here alleges none that were accessible to the Coe Kerr Gallery. Similarly, the holding in *Davis v. Carroll*, 937 F. Supp. 2d 390 (S.D.N.Y. 2013), that the purchaser had not acted in good faith was explicitly premised on "bargain basement prices offered by Salander, along with a battery of irregular and suspicious issues pertaining to SOG's ownership of and right to sell the Eight Disputed Works, [that] constituted red flags that triggered a duty of heightened inquiry on Carroll's part before any consummation of the 2006 Exchanges." *Id.* at 434. Likewise, the denial of the motion to dismiss in *Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381(RWS), 2005 WL 2840330, *5 (S.D.N.Y. Oct. 28, 2005), was premised on two concrete "red flags" available to the purchaser. In contrast, the Complaint is devoid of even a single factual allegation about a "red flag" that the Coe Kerr Gallery could have seen in 1989.

---

[5] Galin claims to need discovery from the long-defunct Coe Kerr Gallery. (Opp. Br. at 8.) However, a claim to need discovery is not a proper basis for sustaining a complaint that is inadequate on its face. "[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). In addition, he acknowledges that the archives he seeks were publicly available without subpoena power. (Opp. Br. at 8.)

## II. NONE OF THE REMEDIES GALIN SEEKS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Galin's Opposition Brief appears to abandon his unjust enrichment claim against Hamada. In any event, he has no claim because he cannot establish that Hamada was enriched at his expense. *Mandarin Trading Ltd v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011). The person who was enriched at Galin's expense was Ramus.

Galin cannot state a claim for a constructive trust because that requires, among other things, a confidential or fiduciary relationship between the parties. *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976). The lack of such a relationship between Galin and Hamada is self-evident, and the Complaint does not allege one.

Galin's claim for an equitable lien on the proceeds from the sale of the Painting fails because, for all of the reasons stated previously, his interest in the Painting was extinguished in 1989 and replaced by a claim against Ramus. Ramus, unfortunately, appears by all indications to be a crook. UCC § 2-403, however, explicitly places the risk of dealing with a crook on the party that entrusts them with property. Moreover, once the purchaser obtains good title, all subsequent transactions pass good title as well.[6] As one Court observed recently, the former owner in Galin's position is "left to bear an unfortunate liability." *Zaretsky v. William Goldberg Diamond Corp.*, 69 F. Supp. 3d 386, 392 (S.D.N.Y. 2014). As here, "[s]uch is the nature of a case like this, where the true perpetrator . . . is beyond the Court's grasp." *Id.* It is understandably an unhappy result for Galin and those similarly situated, but it is the result dictated by the governing law.

---

[6] Of course, it is possible that there will be a subsequent theft or break in title, but at that point the claim will belong to the last person holding good title, not the original owner.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons stated previously, Hamada respectfully submits that the Court should dismiss the Complaint with prejudice.

Dated: New York, New York
November 13, 2015

                                **CAHILL PARTNERS LLP**

                          By:      *s/ John R. Cahill*
                                John R. Cahill
                                Ronald W. Adelman
                                Paul S. Cossu
                                70 West 40th Street
                                New York, NY 10018
                                212-719-4400

                                *Attorneys for Defendant*
                                *Kunitake Hamada*