UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                        :

REED GALIN,                                 :

                         Plaintiff,        :           15-CV-6992 (JMF)

                                      :

          -v-                       :      MEMORANDUM OPINION

                                      :        AND ORDER

KUNITAKE HAMADA,                 :

                                      :

                       Defendant.     :

                                      :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/10/2016

JESSE M. FURMAN, United States District Judge:

        Plaintiff Reed Galin brings this action to recover proceeds from the sale at auction of a

painting by Andrew Wyeth titled "Ice Storm," which are being held in escrow by Christie's.

(*See* Compl. (Docket No. 1) ¶¶ 1, 73-80).  Plaintiff alleges that, in 1989, he purchased a one-third

interest in the painting from his childhood friend David Ramus, "an art dealer."  (*See id.* ¶¶ 16-

19, 20, 27, 31).  Ramus was to then re-sell the painting, with a share of the proceeds going to

Plaintiff.  (*See id.* ¶¶ 23-24, Ex. A).  Without Plaintiff's knowledge or permission, Ramus did re-

sell the painting later in 1989, by exchanging it and "some cash" for "a more valuable painting"

from the now-defunct Coe-Kerr Gallery ("Coe-Kerr") in New York City; Ramus then used the

more valuable painting to satisfy a personal debt.  (*See id.* ¶¶ 36-37).  Plaintiff did not learn

about the transaction with Coe-Kerr until 1996 (the same year that Ramus was convicted of art

fraud offenses in the Northern District of Georgia and a year before Ramus declared

bankruptcy), and did not locate the painting until 2015, when he learned that the painting —

which had subsequently been purchased by Defendant Kunitake Hamada, "an art dealer" — was

to be auctioned at Christie's.  (*See id.* ¶¶ 38, 42-45, 55, 63, 70-72).  Plaintiff initially sought to

block the sale, but the parties ultimately agreed that the sale should proceed and that Christie's would hold the net proceeds (which turned out to be slightly more than $800,000) pending adjudication of the parties' rights to the painting.  (*See id.* ¶¶ 73-80).

Defendant now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint.  Defendant's principal argument is that any interest Plaintiff had in the painting was extinguished pursuant to the "entruster provision" of the Uniform Commercial Code, *see* N.Y. U.C.C. Law § 2-403, when Ramus sold the painting to Coe-Kerr in 1989.  (Mem. Law Supp. Def.'s Mot. Dismiss (Docket No. 10) ("Def.'s Mem.") 9-14).  That provision states that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."  N.Y. U.C.C. Law § 2-403(2); *see also id.* § 2-403(3) (defining "entrusting" to include "any acquiescence in retention of possession regardless of any condition expressed between the parties to the . . . acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods has been such as to be larcenous under the criminal law").  The purpose of the entruster provision is "to 'enhance the reliability of commercial sales by merchants . . . by shifting the risk of resale to one who leaves his property with [a] merchant.'" *Overton v. Art Fin. Partners LLC*, No. 15-CV-3927 (SAS), 2016 WL 413128, at *7 (S.D.N.Y. Feb. 2, 2016) (quoting *Zaretsky v. William Goldberg Diamond Corp.*, 69 F. Supp. 3d 386, 389 (S.D.N.Y. 2014)); *see also Porter v Wertz*, 53 N.Y.2d 696, 698 (1981) (observing that the entruster provision "is designed to enhance the reliability of commercial sales by merchants . . . while shifting the risk of loss through fraudulent transfer to the owner of the goods, who can select the merchant to whom he entrusts his property"); *Brown v. Mitchell-Innes & Nash, Inc.*, No. 06-CV-7871 (PAC), 2009 WL 1108526, at *4 (S.D.N.Y. Apr. 24, 2009) ("The theory behind

the UCC's entrustment provision is that a person who knowingly delivers his property to a merchant dealing in goods of that kind 'assumes the risk of the merchant's acting unscrupulously by selling the property to an innocent purchaser.'" (quoting *Graffman v. Espel*, No. 96-CV-8247 (SWK), 1998 WL 55371, at *3 (S.D.N.Y. Feb. 11, 1998))).

The Court agrees with Defendant that, if the entruster provision applies to the 1989 sale from Ramus to Coe-Kerr, Plaintiff's claims fail as a matter of law — without regard for the circumstances under which Defendant himself procured the painting.  *See, e.g.*, *Goodwin v. Harrison*, 98 S.E.2d 255, 258 (S.C. 1957) ("After property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser and is entitled to the same protection as the bona fide purchaser, irrespective of notice . . . ." (internal quotation marks omitted)).  The problem with Defendant's argument is that the weight of authority makes plain that Section 2-403 establishes an affirmative defense.  *See, e.g.*, *United States v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1253-54 (2d Cir. 1989) (holding that "[t]he burden of proving 'buyer' status rests with the party claiming it" and that "the absence of 'buyer' status is not an element which the plaintiff must establish to make out a prima facie showing of liability"); *accord, e.g.*, *Integrity Bank Plus v. Talking Sales, Inc.*, No. 04-CV-4523 (RHK) (JSM), 2005 WL 419694, at *3-4 (D. Minn. Feb. 22, 2005); *In re Certain Pharm. & Proceedings of Northland Providers, Inc.*, 78 F. Supp. 2d 954, 962-64 (D. Minn. 1999); *see also Spainerman Gallery, Profit Sharing Plan v. Merritt*, No. 00-CV-5712 (LTS) (THK), 2003 WL 289704, at *6 (S.D.N.Y. Feb. 6, 2003) (referring to Section 2-403(2) as a "statutory estoppel provision"); *Porter v. Wertz*, 416 N.Y.S.2d 254, 257 (N.Y. App. Div. 1979) (referring to Section 2-403 as "the defense of statutory estoppel"), *aff'd*, 53 N.Y.2d 696 (1981); Fed. R. Civ. P. 8(c)(1) (providing a non-exclusive list of affirmative defenses that includes

"estoppel").  *But see Brown*, 2009 WL 1108526, at *7 (granting a motion to dismiss on the ground that the plaintiff's "failure to plead" certain facts left the defendant "within the protective ambit of § 2-403").  And the law is clear that a plaintiff is not required "to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  Instead, a court may grant a motion to dismiss based on an affirmative defense only if, on the face of the complaint, the defense "clearly" applies. *See Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999).

Here, given Plaintiff's own allegations in the Complaint, it seems likely that the entruster provision will apply.  Among other things, those allegations seem to establish that Ramus qualified as a "merchant" who regularly sold paintings (Compl. ¶¶ 16, 37, 40-41); that Plaintiff "entrusted" the painting to Ramus within the meaning of Section 2-403(3) (*id.* ¶ 23, Ex. A); and that the sale price was not "obviously below market" (*see id.* ¶ 36), one of the principal "red flags" that could defeat application of the entruster provision, *see Joseph P. Carroll Ltd. v. Baker*, 889 F. Supp.2d 593, 604 (S.D.N.Y. 2012); *accord Davis v. Carroll*, 937 F. Supp. 2d 390, 426 (S.D.N.Y. 2013).  And while the Complaint does assert that Coe-Kerr "was not a good-faith purchaser for value" (Compl. ¶ 59) and that Coe-Kerr "committed its own fraud in the transaction" (*id.* ¶ 39), the Court need not consider such conclusory allegations on a motion to dismiss. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 686 (2009).  Nevertheless, the Court is unable to conclude that the defense is "clear" on the face of the Complaint because the ultimate question of whether Coe-Kerr purchased the painting in "good faith" as a "buyer in the ordinary course" within the meaning of Section 2-403 requires consideration of facts outside the Complaint — for example, whether Coe-Kerr had any "warning signs" about Ramus's right to sell the painting and, perhaps, the "standards of the art industry" (given Coe-Kerr's own status as

a "merchant").  *See Graffman*, 1998 WL 55371, at *5 ("If the trier of fact were to determine that reasonable commercial standards require an investigation into provenance only when there are warning signs the questions of whether there were warning signs, and what degree of investigation was reasonable, are factual inquiries."); *see also, e.g.*, *Davis*, 937 F. Supp. 2d at 426 ("In many cases, application of [the good-faith buyer] rule may call for a fact-intensive inquiry guided by experts in art industry norms."); *Interested Lloyd's Underwriters v. Ross*, No. 04-CV-4381 (RWS), 2005 WL 2840330, at *5 (S.D.N.Y. Oct. 28, 2005) ("Many lower courts have held that to be a purchaser in the ordinary course within the meaning of § 2–403 an art dealer must investigate the provenance of a work of art being purchased, even if the work is being purchased honestly and from a reputable dealer.").  Accordingly, the Court may not grant Defendant's motion based on the entruster provision of Section 2-403.

Defendant's other arguments merit little discussion at this stage.  The first — that under the law of bankruptcy, Plaintiff's interest *might* have been turned over to Ramus's estate — is irrelevant, as Defendant himself appears to concede.  (Def.'s Mem. 15 ("The issue is purely hypothetical in this case . . . .")).  Likewise, even if it was impossible for Plaintiff to have acquired *full* title to the painting through the bankruptcy process, as he asserts (Compl. ¶ 62), he presumably retained at least his partial interest.  Second, although Defendant argues briefly that Plaintiff's particular claims fail as a matter of New York law (*see* Def.'s Mem. 16-17; Reply Mem. Further Supp. Def.'s Mot. Dismiss (Docket No. 19) ("Def.'s Reply") 8), the Court declines to reach those arguments now, with one exception.  Defendant argued in his opening brief that Plaintiff's equitable lien claim fails because he does not allege an express or implied contract between the parties.  (Def.'s Mem. 16).  But Defendant did not renew those arguments in his reply after Plaintiff responded to them (*see* Mem. Law Opp'n Mot. Dismiss (Docket No.

18) ("Pl.'s Opp'n") 11-12), so the Court deems them abandoned. *See, e.g.*, *Persh v. Petersen*, No. 15-CV-1414 (LGS), 2015 WL 5326173, at *6 (S.D.N.Y. Sept. 14, 2015). By contrast, Defendant argues for the first time in his reply that Plaintiff's constructive trust claim fails because he does not allege a confidential or special relationship between the parties. (Def.'s Reply 8). Defendant did not make that argument in his opening brief, so the Court will not consider it. *See, e.g.*, *Manon v. Pons*, 131 F. Supp. 3d 219, 238-39 (S.D.N.Y. 2015). The one argument that the Court does reach now is Defendant's argument for dismissal of Plaintiff's unjust-enrichment claim (*see* Def.'s Mem. 16-17), to which Plaintiff did not respond in his opposition. In light of that, the claim is dismissed as abandoned. *See, e.g.*, *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005).

For the foregoing reasons, Defendant's motion to dismiss is DENIED, except as to Plaintiff's unjust-enrichment claim, which is dismissed. Further, Defendant shall file his answer by **May 31, 2016**, and the parties shall appear for an initial pretrial conference with the Court on **June 15, 2016**, at **3:15 p.m.** in Courtroom 1105 of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York 10007. In light of the Court's ruling with respect to Defendant's Section 2-403 argument, the parties should be prepared to address at that conference (and should discuss with one another in advance of the conference) whether the Court should limit discovery in the first instance to the question of whether the entrustment provision applies to Coe-Kerr's purchase of the painting and then allow an early summary judgment motion on that question. The parties shall include their respective views on that issue in the joint letter that they are to submit by the Thursday prior to the initial pretrial conference, as directed in the Notice of Initial Pretrial Conference. (*See* Docket No. 4).

The Clerk of Court is directed to terminate Docket No. 9.


SO ORDERED.

Date:   May 10, 2016
        New York, New York

_____
            JESSE M. FURMAN
         United States District Judge