G826galc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

REED GALIN,

         Plaintiff,

    v.                              15 CV 6992(JMF)

JOHN CHILL,

         Defendant.
------------------------------x
                              New York, N.Y.
                              August 2, 2016
                              2:30 p.m.

Before:

              HON. JESSE M. FURMAN,

                          District Judge

                  APPEARANCES

IRINA TARSIS, ESQ.
    Attorney for Plaintiff

JOHN R. CAHILL, ESQ.
    Attorney for Defendant

1                (In open court; case called)
2                THE LAW CLERK:  Counsel, please state your name for
3     the record.
4                MS. TARSIS:  Irina Tarsis.
5                THE COURT:  Good afternoon.
6                MR. CAHILL:  Good afternoon, your Honor.  John Cahill
7     of Cahill Partners for the defendant Hamada.  We also have a
8     summer associate who we were told could sit at counsel table.
9                Before we went on the record, I inquired of Ms. Tarsis
10    whether she would be filing a notice of appearance because she
11    is not part of Mr. Altman's firm, and she said she would be
12    doing that shortly.  I don't have an objection to her appearing
13    based on that representation.
14               THE COURT:  Does the summer associate have a name?
15               MR. CAHILL:  Oh, yes.  It would be easier for her to
16    say it and spell it for the Court.
17               MS. SALEHNIA:  Shieva Salehnia.
18               THE COURT:  Good afternoon, Ms. Salehnia.
19               Ms. Tarsis, on the issue of your appearance, can you
20    tell me what the story is there?  You are not with Mr. Altman's
21    firm?
22               MS. TARSIS:  I have my own practice and I sometimes
23    work with Richard Altman on cases.  He asked me to assist him
24    with research in this instance.  Given he is traveling out of
25    the country, he asked me to appear in his placed today.

1            THE COURT:  Under my rules, number one, you are
2    required to enter a notice of appearance to appear in court;
3    number two, as a general matter, the counsel who would try the
4    case is required to appear for conferences.  In a situation
5    like this where we're dealing with discovery disputes and
6    potentially disputes with respect to representations that were
7    or were not made from one side to another, I am a little
8    surprised frankly that Mr. Altman is not here in person and if
9    he wasn't able to be here, he wouldn't have advised me of that
10   and requested that this conference be rescheduled.
11           You are welcome to attend for today.  I am going to
12   resolve what we need to resolve because we're here, but I want
13   you to convey to him that I am not particularly happy about
14   that and you need to promptly file a notice of appearance.
15           Okay?
16           MS. TARSIS:  Yes, your Honor.
17           THE COURT:  We're here to deal with two separate
18   disputes.  I have to say at the outset that I am a little
19   puzzled and annoyed by the fact that both sides appear to link
20   the two disputes which to me they are completely separate.
21   That is to say the defendant has served certain discovery
22   requests on plaintiff, including a request for deposition, and
23   I am not aware of any principle that says that plaintiff can
24   avoid complying with his discovery obligations based on
25   discovery requests made to other parties or to the defendant

1   and vice versa.  I don't see anything in the rules that allows
2   the defendant to interfere with a properly served subpoena
3   unless a motion to quash is made based on the plaintiff's
4   alleged failure to comply with his discovery obligation.  All
5   of which is to say if plaintiff had a problem with the
6   discovery served on him, his recourse was to confer with the
7   defendant and then come to me.  If there were any remaining
8   disputes and if the defendant had a problem with the subpoenas
9   served on Christie's, the remedy was to confer with the
10  plaintiff and barring any resolution there to come to me with a
11  proper motion to quash.  I really don't understand why these
12  two things have been sort of paired and then presented to me
13  because of the situation we're in.
14          Now, all which is to say I intend to deal with these
15  things separately, taking up first the plaintiff's failure to
16  respond to the defendant's discovery requests.  I don't see any
17  basis for that failure.  I understand the limitations that I
18  have placed on discovery at the first conference; but given the
19  allegations set forth in the first pleaing and given my review
20  of the defendant's discovery requests, which were submitted to
21  my chambers this morning by e-mail, I think it is well within
22  the scope of the discovery that I authorized at the initial
23  conference and I find in hard to understand why the plaintiff
24  should not sit for a deposition and should not be required to
25  respond to the interrogatories and document requests.

1            Ms. Tarsis.

2            MS. TARSIS:  If I may.

3            THE COURT:  You may.

4            MS. TARSIS:  Firstly, Mr. Altman indicated that he did not receive the documents and in his letter of July 20th explained that he thought the limits were placed as defendant would not be responding to any of the interrogatories, the plaintiff would not be either.  Secondly, he also indicated that materials that he had supplied with the complaint were documents available to him and to his client.  Thirdly, his client had a heart attack about a month ago.  So he is not in a position to travel to New York for a deposition.

            Furthermore, Mr. Altman is out of the country himself right now so that is probably together explaining why there has been a delay in responding to the documents from the defendant.

            THE COURT:  Well, those are separate issues. Plaintiff's medical condition is obviously one thing and if he can't sit for a deposition or travel, certainly I respect that and we'll get to the request for an extension on that basis.

            Having said that, I do recall the question of whether Mr. Hamada, the defendant, should sit for deposition and saying squarely that the answer is no because he wouldn't have had any information concerning the issues that I authorized discovery on, namely, the transfer from Mr. Hamada to the Coe Kerr Gallery; but I don't recall any similar discussion with respect

G826galc

1   to the plaintiff's deposition.  If Mr. Altman believed that
2   what was good for the goose was good for the gander and
3   principles suggested that that discovery was not appropriate
4   with respect to the plaintiff, I think he should have sought
5   clarification from me or made an objection and then conferred
6   and brought it to my attention to resolve any disputes.
7           Again, given the allegations in the complaint and
8   given that plaintiff may well have information concerning the
9   certainty of the entrustment to Mr. Ramus, if not the sale to
10  the Coe Kerr Gallery, and not to mention when he found out
11  about that sale and so forth, I don't see any reason that he
12  shouldn't be disposed in this matter or that Mr. Altman and
13  Mr. Galin shouldn't be required to respond to the discovery
14  requests.
15          So to the extent that you are essentially objecting or
16  seeking to quash those requests, the objections are overruled
17  and you are required to respond.  We'll talk about scheduling
18  the deposition in due course when we get to the question of an
19  extension.
20          MS. TARSIS:  In addition, one of the requests is
21  whether Mr. Hamada is also subject to similar discovery rules
22  because we don't know whether he received any documents from
23  Coe Kerr Gallery similarly as Mr. Galin is unaware of the
24  actual crux of the transaction between David Ramus and Coe Kerr
25  Gallery.  There may be documents that defendant has in his

G826galc

1  possession.

2  THE COURT:  I was very clear that discovery was to be
3  limited to essentially the transfer of the painting to the Coe
4  Kerr Gallery from Mr. Ramus, and I would think that by
5  extention the entrustment to Mr. Ramus would do that.  I find
6  it hard to imagine what knowledge or documents Mr. Hamada would
7  have with respect to that.  In that regard, I am certainly not
8  going back or reconsidering my decision that he is not, unless
9  you are able to show that it wouldn't be a fishing expedition
10  and he is not to be deposed in this matter.  But if you served
11  discovery requests that you think are within the scope of what
12  I have authorized for discovery and they have something, sure,
13  they are required to turn it over.  If they don't, they will
14  tell you that they don't have anything.  I don't think we need
15  to revisit what the scope of that discovery is.

16  The bottom line is I don't see any basis for you not
17  to respond to the discovery requests that have been served and
18  for Mr. Galin not to be deposed.  If you have specific
19  objections as to any of the particular requests on the grounds
20  that they are beyond the scope of what I am authorized, you are
21  welcome to raise those with defense counsel and bring them to
22  my attention if you are not able to resolve any disputes.  As
23  far as a categorical refusal to comply with discovery is
24  concerned, it is not happening.  So you better respond and I
25  will give you two weeks from today to do that.  That addresses

1   that.

2   Turning now to Mr. Cahill.  I don't see anything, as I
3   said, under the rules that allows you to basically direct
4   Christie's not to respond to a properly served subpoena based
5   on your view that plaintiff should comply with his obligations.
6   I certainly agree he has to comply with his obligations as I
7   have just said, but I am inclined to say that unless you are
8   prepared to file a motion to quash, Christie's should comply
9   with the subpoena.

10   MR. CAHILL:  Yes, your Honor.  I don't disagree.  We
11   certainly meant to ask Christie's not to produce the documents
12   before we had time to move to quash.  We were hoping not to
13   have to do that because the subpoena to Christie's is outside
14   the scope of discovery, but we wouldn't have incurred the time
15   and expense if discovery was proceeding normally.  There was a
16   blank refusal to brief anything to you.  Exhibit A said, look,
17   Mr. Hamada doesn't have any documents, but you are welcome to
18   serve discovery requests on us.  So we wouldn't expect
19   Christie's to simply not produce documents and frankly they
20   wouldn't honor that request if we didn't move to quash.  We
21   just asked given the timing that they wait to give us that time
22   to bring this to the Court.

23   Since the Court has ordered the production of
24   documents by plaintiff, even though they requested from
25   Christie's the transfer from Coe Kerr to Ramus that is

1    technically outside the scope of discovery, we wouldn't have
2    any objection.  We will not incur the time and expense to move
3    to quash at this point since there will be other discovery.
4             THE COURT:  So I will treat that as a moot issue--
5             MR. CAHILL:  Yes.
6             THE COURT:  -- putting aside whatever merit it may
7    have had if you had filed a motion to quash.
8             The last item on the agenda is the question of an
9    extension of time to take discovery.  I certainly wanted to
10   have discovery sooner rather than latter.  That was whole idea
11   behind limiting the scope of it and having motion practice on
12   the issues that I discussed in my earlier opinion.  Having said
13   that, I think Mr. Galin's health issue is a solid basis to
14   grant an extension.  So I will grant a 30-day extention for the
15   discovery deadline, which brings that deadline from
16   September 9th to October 9th, and in light of that means
17   October 11th given the holiday and the weekend.  In light of
18   that I will adjourn the post-discovery conference from the
19   current date, which I think is September 16th, to October 14th
20   at 11:15 in the morning.
21            Now, I sincerely hope that you can get discovery done
22   in that time given the limitations on the scope.  I don't know
23   what Mr. Galin's is health situation precisely is and that will
24   complicate matters, but why don't you make every effort, which
25   is another way of saying, I would not look particularly with

G826galc

1    great favor on a motion for extension.
2             The last question is regarding settlement.
3    Mr. Altman's letter indicates that you are not willing to go to
4    mediation.  I take it that remains the case.  That was only a
5    few days ago.  I just want to ask you and press you on that.
6             Is that correct, Ms. Tarsis?
7             MS. TARSIS:  That is correct, your Honor.
8             THE COURT:  So I will leave things as is.
9             Anything else that we need to deal with, Ms. Tarsis?
10            MS. TARSIS:  No, your Honor.
11            THE COURT:  Mr. Cahill?
12            MR. CAHILL:  No, your Honor.  Thank you.
13            THE COURT:  I will stay on the bench, but this matter
14   is adjourned.  Thank you.
15                                 o0o