UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REED GALIN,

        *Plaintiff*,

    -against-

KUNITAKE HAMADA,

        *Defendant*.

ECF CASE

15-CV-6992 (JMF)


# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S MOTION FOR
# SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

Dated: 2016-November-11

CAHILL PARTNERS LLP

John R. Cahill
Paul Cossu
70 West 40th Street
New York, NY 10018
(212) 719 – 4400

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

I.     Legal Standard for Fed. R. Civ. P. 11(c) Motions ............................................... 6

II.    Sanctions are Warranted for the Unsupported Allegations in the Complaint ..... 6

    A.     The Evidence Obtained in Discovery Confirms the
          Lack of Evidentiary Support for the Allegation in the Complaint ............... 6

    B.     Plaintiff and Plaintiff's Counsel Did Not Conduct a Reasonable Inquiry Into
          the Allegations in the Complaint and Had No Good-Faith Basis to Believe that
          Evidentiary Support for the Allegations Would Exist Following Further Discovery .. 8

CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Abner Realty, Inc. v. Adm'r. of Gen. Servs Admin.*,
No. 97 Civ. 3075, 1998 WL 410958 (S.D.N.Y. Jul. 22, 1998) ................................................ 10-11

*Bunnell v. Haghighi*,
No. 12-CV-6412, 2016 WL 1715338 (E.D.N.Y. Apr. 29, 2016) ................................................ 6-8

*Holmes v. Allstate Corp.*,
No. 11 Civ. 1543, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ...................................................... 6

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*,
114 F.R.D. 684 (S.D.N.Y. 1987) ....................................................................................................... 8

**Statutes & Rules**

Fed. R. Civ. P. 11 ............................................................................................................... *passim*

Fed. R. Civ. P. 26 ...................................................................................................................... 3, 5

Fed. R. Civ. P. 37 ...................................................................................................................... 3, 5

Defendant Kunitake Hamada ("Hamada" or "Defendant") respectfully submits this Memorandum of Law in support of his motion, pursuant to FED. R. CIV. P. 11(c), for sanctions against Plaintiff Reed Galin ("Plaintiff") and the Law Office of Richard A. Altman ("Plaintiff's Counsel").

**PRELIMINARY STATEMENT**

This motion is brought to remedy the significant misrepresentations made by Plaintiff and Plaintiff's Counsel in the Complaint.[1] As the Court is well aware, this action was brought by Plaintiff seeking the entire proceeds from the sale of a painting by Andrew Wyeth (the "Painting") that Plaintiff was a one-third owner of over 25 years ago. The crux of the Complaint, and the reason that it was able to survive a motion to dismiss, was its allegations that "Coe-Kerr committed its own fraud in the transaction." (Complaint, at ¶ 39.) However, the evidence developed in discovery established that not only is this allegation entirely false, but that Plaintiff and Plaintiff's Counsel *knew it to be false when making the allegation*. There is literally no evidence to support the causes of action in the Complaint; worse, Plaintiff and his counsel did nothing to investigate that before initiating this costly federal action.

Despite the demonstrable falsity of the allegations in the Complaint, Plaintiff has refused to withdraw the Complaint and, instead, continues to seek an "angle" by which he can profit at the expense of Hamada—a good faith purchaser of the Painting who has incurred significant legal fees as a result of Plaintiff's lawsuit. Indeed, when pressed on the evidentiary support for the allegations in the Complaint, Plaintiff conceded that his basis was his "gut feeling." For the reasons set forth below, Hamada respectfully requests that sanctions be imposed upon Plaintiff and his counsel, in the form of attorneys' fees incurred defending this baseless lawsuit and as the Court otherwise deems appropriate, in order to deter similar frivolous conduct in the future.

---

[1] The Complaint, ECF Doc. No. 1, is annexed as **Exhibit A** to the accompanying Declaration of Paul Cossu ("Cossu Decl."), dated November 11, 2016.

1

**STATEMENT OF FACTS**

1.  **Plaintiff's Allegations**

After learning that the Painting would be sold at auction by Christie's Inc. ("Christie's") in May 2015, Plaintiff contacted Christie's and asserted an ownership interest in the Painting. Following communications with Plaintiff's Counsel and Defendant's Counsel, it was agreed that the sale of the Painting would proceed and that Christie's would hold the sale proceeds pending a determination as to which party had good title to the Painting at the time of its sale. (*See* Complaint, at ¶ 6.) On September 9, 2015, Plaintiff's Counsel filed the Complaint. The relevant allegations in the Complaint are as follows:

- "The provenance of the Painting, and the facts set out below, disclose that at an earlier date, it was transferred fraudulently and criminally, in violation of plaintiff's rights." (*Id.,* at ¶ 7.)
- "As a consequence of that fraudulent and criminal transfer, defendant does not have title to the Painting, and it remains with the plaintiff." (*Id.,* at ¶ 8.)
- "Under New York law, plaintiff's rights subsist notwithstanding the transfer, and he is entitled to the proceeds of the sale wherever they may be found." (*Id.,* at ¶ 9.)
- "Because of the fraudulent nature of the transaction, the Painting was never actually sold to Coe-Kerr, and in fact Coe-Kerr committed its own fraud in the transaction, by failing to investigate either the provenance or plaintiff's contractual rights." (*Id.,* at ¶ 39.)
- "Although Ramus's debt to plaintiff was extinguished, the Painting was not property of his estate, and therefore plaintiff's interest in it was not extinguished." (*Id.,* at ¶ 55.)
- "As a result of Ramus's criminal acts and thievery with respect to the Painting, he could not pass good title to Coe-Kerr Gallery, and did not do so." (*Id.,* at ¶ 58.)
- "On information and belief, Coe-Kerr Gallery was not a good-faith purchaser for value." (*Id.,* at ¶ 59.)
- "Coe-Kerr Gallery went out of business around 1991, and plaintiff does not know the provenance of the Painting after that date." (*Id.,* at ¶ 60.)
- "Therefore, by virtue of the (a) fraud and conversion of Ramus, (b) the extinguishment in the bankruptcy of any claims on behalf of both Ramus and Sentel, it necessarily follows that plaintiff is the sole owner of the Painting, and is entitled to the proceeds of its sale." (*Id.,* at ¶ 62.)
- "For about twenty years, from 1995 until May 2015, plaintiff sought to learn the whereabouts of the Painting, without success." (*Id.,* at ¶ 63.)

### 2. The Motion to Dismiss and the Evidence Obtained During Discovery

In denying Defendant's motion to dismiss (except as to the unjust enrichment claim), this Court held that entrustment provision is an affirmative defense and raised the prospect of limiting discovery "in the first instance to the question of whether the entrustment provision applies to Coe-Kerr's purchase of the painting." (Cossu Decl., **Exhibit B** at 6.) Following a Conference on June 15, 2016, a Civil Case Management Plan and Scheduling Order was entered limiting discovery, over the objection of Plaintiff's Counsel,[2] to "the transfer of the painting at issue from Mr. Ramus to the Coe-Kerr Gallery and application of the entrustment provision." (*Id.*, **Exhibit C** at 7.) A deadline for fact discovery was set for September 9, 2016, which was subsequently extended twice at the request of Plaintiff's Counsel.[3]

During discovery, Plaintiff subpoenaed Christie's for documents ***not relating*** to the "the transfer of the painting at issue from Mr. Ramus to the Coe-Kerr Gallery," but rather the initial purchase of the Painting by Mr. Ramus "in or around 1989." (*Id.*, **Exhibit F**.) Plaintiff also issued subpoenas to Warren Adelson (a former director of the Coe-Kerr Gallery) and David Ramus. (*See id.*, **Exhibit G**.) Depositions of both Mr. Adelson (in New York) and Mr. Ramus (in California) were taken prior to the close of discovery.[4]

---

[2] Plaintiff's Counsel asserted at the Conference that "I believe, that just because–even if–even if this was an entrustment and even if the Coe-Kerr Gallery knew nothing, that somehow that's the end of the story. I don't believe that's the case." (Cossu Decl., **Exhibit D** at 5:11-14.)

[3] In the initial request for an extension of the discovery deadline, Plaintiff's Counsel informed the Court that "Mr. Galin has also said that he is on relatively good terms with members of Mr. Ramus's family, and is asking for their assistance in locating Mr. Ramus." (*Id.*, **Exhibit E** at 2.) As set forth below, Plaintiff's Counsel intentionally misled the Court as to Plaintiff's relationship with Mr. Ramus and his efforts to contact and locate him.

[4] Plaintiff's Counsel's conduct prior to, and at, the deposition of Mr. Ramus will be the subject of a forthcoming sanctions motion under FED. R. CIV. P. 26 & 37 for, *inter alia*, (a) the intentional withholding of relevant documents and (b) seeking discovery beyond what the Court permitted.

Mr. Adelson testified that (1) he did not have any suspicions about Mr. Ramus's "honesty and integrity" while he was at Coe-Kerr Gallery (*id*., **Exhibit H** at 20:18-21); (2) he did not have any knowledge that Plaintiff was once a co-owner of the Painting (*see id*., **Exhibit H** at 25:8-14); and (3) that transactions that involved the "trading" of paintings with other art dealers (which could also include cash payments) were a standard practice at the Coe-Kerr Gallery. (*Id*., **Exhibit H** at 13:3-19.)

Mr. Ramus testified that (1) he began experiencing financial difficulties in "'90, '91 when the Japanese bubble economy burst" (and, thus, after the transfer of the Painting to the Coe-Kerr Gallery) (*id*., **Exhibit I** at 83:3-18); (2) even after he began experiencing financial difficulties, he did his "very best" to make sure that no one at the Coe-Kerr Gallery knew that he was in financial distress (*id*., **Exhibit I** at 90:19-91:8); (3) when selling works of art like the Painting, he would price the works based on what he thought they were worth and what he thought "the market would bear" (*id*., **Exhibit I** at 82:19-83:1); (4) Plaintiff has had Mr. Ramus's telephone number for years (*see id*., **Exhibit I** at 120:7-15); (5) if Plaintiff "wanted answers to questions, all he had to do was give me a call" (*id*., **Exhibit I** at 96:7-25); and (6) over 20 years ago another of Plaintiff's attorneys, David Johnson, visited Mr. Ramus and told him that Plaintiff was "looking for an angle to get [Plaintiff] some money." (*Id*., **Exhibit I** at 99:15-18.)

Mr. Ramus further testified that the day before his deposition, he received a call from another of Plaintiff's attorneys, David Johnson, who advised him that Plaintiff could not speak to him until after the deposition, but that Plaintiff "wanted very much for me to try and corroborate something." (*Id*., **Exhibit I** at 38:10-39:9.) Mr. Ramus went on to testify that Plaintiff "just wanted to make sure there was some specific piece of information concerning the transaction with Coe Kerr Galleries that would *forestall Summary Judgment*" (*id*., **Exhibit I** at 96:3-25 (emphasis

4

added)) and that the purpose of the call "*was to try to get me to say that I lied to Coe Kerr*." (*Id*., **Exhibit I** at 81:7-18 (emphasis added).) Mr. Ramus also played a voicemail message he received from Plaintiff after he spoke with Mr. Johnson, in which Plaintiff stated, "when I embarked on the 'Ice Storm' lawsuit, I really didn't think what my lawyer explained that is [*sic*] would be to involve you, but this is where I find myself." (*Id*., **Exhibit I** at 119:1-5.)

Following Mr. Ramus's deposition, Plaintiff's Counsel produced a series of documents that had previously been withheld (and which will be the subject of a separate sanctions motion under FED. R. CIV. P. 26 & 37), including documents showing that Mr. Adelson had been involved in Mr. Ramus's bankruptcy proceeding. (*See id*., **Exhibit J** at 1, 5.) Despite having been on notice of the Coe-Kerr Gallery's involvement in the transfer of the Painting since the mid-1990s, as well as Mr. Adelson's involvement in the bankruptcy proceeding, Plaintiff did not take any steps to contact Mr. Adelson or anyone else from the Coe-Kerr Gallery prior to filing his lawsuit. (*See id*., **Exhibit K** at 54:14-58:4.) Instead of seeking out evidence about the transaction, Plaintiff testified that his basis for believing that the Coe-Kerr Gallery engaged in fraudulent or criminal behavior vis-a-vis Mr. Ramus was his "gut feeling." (*Id*., **Exhibit K** at 82:12-83:10.)

Following the close of discovery, a letter was sent to Plaintiff's Counsel, on November 2, 2016, advising him that the Defendant intended to seek Rule 11 sanctions if the Complaint was not withdrawn. (*See id*., **Exhibit L**.) Following the scheduling of both the Rule 11 motion and the summary judgment motion at the Conference on November 4, 2016, an email was sent to Plaintiff's Counsel requesting any evidence that would support the allegations in Complaint (as well as the contact information for the court reporter who transcribed Mr. Adelson's deposition). (*See id*., **Exhibit M**.) To date, Plaintiff's Counsel has not responded to the email (requiring Defendant's counsel to have to track down the court reporter's company in order to have a copy of Mr. Adelson's deposition transcript by the deadline for serving this motion).

## ARGUMENT

The evidence developed during discovery, particularly the testimony of both Mr. Adelson and Mr. Ramus, unequivocally establishes that (a) the allegations of fraud and wrongdoing by the Coe-Kerr Gallery in the Complaint are entirely unsupported, (b) that Plaintiff has had the means to determine whether the allegations had any evidentiary support for the past 25 years, and (c) that Plaintiff either (i) was aware that the allegations lacked evidentiary support or (ii) intentionally chose not to investigate the allegations because he knew the investigation would not provide any evidentiary support to his "angle" for an interest in the Painting.

### I. Legal Standard for Fed. R. Civ. P. 11(c) Motions

When filing a complaint or other written papers with the Court, the attorney signing and filing the document is certifying to the Court that "to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2). "In determining whether a plaintiff has engaged in conduct violating Rule 11's requirements, courts apply an objective standard of reasonableness." *Holmes v. Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 627238, at *14 (S.D.N.Y. Jan. 27, 2012) (citations omitted).

### II. Sanctions are Warranted for the Unsupported Allegations in the Complaint

#### A. The Evidence Obtained in Discovery Confirms the Lack of Evidentiary Support for the Allegation in the Complaint

A party's "obligations with respect to the contents of…papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Bunnell v. Haghighi*, No. 12-CV-6412, 2016 WL 1715338, at *6 (E.D.N.Y. Apr.

6

29, 2016) (citations omitted) (awarding sanctions for failure to withdraw "allegation even after it was shown to be inaccurate.").

As set forth in the further detail in the Statement of Facts, there was no evidence obtained or developed during the five months of fact discovery that provided any support to Plaintiff's allegations that "in fact Coe-Kerr committed its own fraud in the transaction, by failing to investigate either the provenance or plaintiff's contractual rights" (Complaint, at ¶ 39) or "[o]n information and belief, Coe-Kerr Gallery was not a good-faith purchaser for value." (*Id.*, at ¶ 59.) ***At best***, the only evidence that Plaintiff has been able to develop is that none of the relevant parties recall a transaction from 27 years ago, but that they have no reason to believe that any sort of fraud took place in the transaction. (*See* Cossu Decl., **Exhibit H** (Adelson Tr.) at 20:18-21, 24:5-10; **Exhibit I** (Ramus Tr.) at 90:19-91:8.) Similarly, testimony from Mr. Adelson established that transactions that involved the "trading" of paintings with other art dealers (which could also include cash payments) was a common practice at the Coe-Kerr Gallery and, therefore, would not have raised a red flag. (*Id.*, **Exhibit H** at 13:3-19.) Further, this Court has already found, the allegations in the Complaint established that the "sale price was not 'obviously below market.'" (*Id.*, **Exhibit B** at 4.)

Rather, what discovery has established (and what was known or otherwise ignored by Plaintiff and Plaintiff's Counsel prior to the filing of the Complaint (*see* Section II(B), *infra*), is that there is not one iota of evidence that the Coe-Kerr Gallery "committed its own fraud" or was otherwise on notice of red flags surrounding Mr. Ramus when it acquired the Painting from him. (*See* pp. 3-5, *supra*.) Just like Plaintiff, Mr. Adelson and the Coe-Kerr Gallery did not have any knowledge of Mr. Ramus's financial difficulties or criminal behavior until Mr. Ramus was indicted in 1995 (over five years after the transaction at issue). (*Id.*, **Exhibit H** at 20:18-21:4.)

Therefore, good title to the Painting transferred to the Coe-Kerr Gallery in 1989 and, as such, good title remains with Defendant Hamada.

Indeed, it is now clear that the only basis for asserting that the Coe-Kerr Gallery committed fraud and ignored red flags that Plaintiff could identify was his "gut feeling." (*Id.*, **Exhibit K** (Galin Tr.) at 82:12-83:10.) A "gut feeling" does not qualify as "evidentiary support" for the factual contentions in the Complaint alleging that good title did not transfer (*see* Complaint ¶¶ 7-9, 39, 55, 58-60, and 62-63), particularly after Plaintiff was granted several extensions to an already-generous discovery schedule.[5] *See* FED. R. CIV. P. 11(b)(2). Plaintiff's (and Plaintiff's Counsel's) refusal to withdraw these allegations (and the Complaint accordingly) merits the imposition of sanctions for the continued certification of factual contentions that lack any evidentiary support. *See Bunnell*, 2016 WL 1715338, at *6.

### B. Plaintiff and Plaintiff's Counsel Did Not Conduct a Reasonable Inquiry Into the Allegations in the Complaint and Had No Good-Faith Basis to Believe that Evidentiary Support for the Allegations Would Exist Following Further Discovery

"When it is obvious from the inadequacies of the proposed pleading that plaintiff's counsel engaged in little or no preliminary factual and legal investigation before filing a proposed pleading, Rule 11 directs the court to impose reasonable costs and attorney's fees against the offending party." *Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*, 114 F.R.D. 684, 689 (S.D.N.Y. 1987) ("When the attorney can get the information necessary to certify the validity of the claim in public fashion and need not rely on the client, he must do so. To decide if the attorney may rely solely on his client, he should determine if his knowledge is direct or hearsay and check closely the plausibility of the client's account.").

---

[5] Plaintiff's Counsel's statement to the Court that "Mr. Galin has also said that he is on relatively good terms with members of Mr. Ramus's family, and is asking for their assistance in locating Mr. Ramus" (*id.*, **Exhibit E** at 2), is belied by the fact that Plaintiff has had Mr. Ramus's phone number for years and could have called him at any time. (*Id.*, **Exhibit I** at 96:7-25, 120:7-15.)

Rather than lend support to the allegations made by Plaintiff's Counsel, the discovery that took place instead established that Plaintiff has based his claims, not on direct knowledge *or even hearsay*, but rather his "gut feeling" in seeking an "angle" to get money for the past 20+ years. (Cossu Decl., **Exhibit I** at 99:15-18; **Exhibit K** at 83:5-10.) This "angle" has included (1) receiving distribution payments from Mr. Ramus's bankruptcy proceeding (*id.*, **Exhibit K** at 58:5-59:14); (2) attempting to make an insurance claim for the failure to receive his one-third share of the sale proceeds from the Painting (*id.*, **Exhibit I** at 99:2-6); (3) attempting to make claims against other creditors of Mr. Ramus (*id.*, **Exhibit I** at 99:6-7); and finally, (4) bringing this action against Hamada.[6] Plaintiff's Counsel had an unquestionable duty to conduct a factual and legal investigation into the basis for Plaintiff's claims. As set forth below, no such investigation was ever undertaken as Plaintiff's Counsel had no contact with Mr. Adelson or Mr. Ramus prior to filing the Complaint. Indeed it seems that Plaintiff's Counsel only sought names of relevant witnesses from Plaintiff after the motion to dismiss was decided, and even then, did not know to what those potential witnesses would testify. (*See id.*, **Exhibit D** at 12:5-7 ("There are some other people that Mr. Galin has identified to me and I will have to do some informal investigation and find out: A, what they know; and B, if they're willing to talk to me.").)

What we do know is that Plaintiff has been aware of the Coe-Kerr Gallery's acquisition of the Painting since the 1990s. (*Id.*, **Exhibit K** at 54:14-58:4.) However, despite this knowledge (and Plaintiff's knowledge of Mr. Adelson's involvement in Mr. Ramus's bankruptcy proceeding (*see id.*, **Exhibit J** at 1, 5)), Plaintiff and Plaintiff's Counsel made no effort to ever contact Mr. Adelson

---

[6] It is indicative of the bad-faith nature of the allegations in the Complaint that Plaintiff and Plaintiff's Counsel are not asserting that Plaintiff is entitled to a one-third share in the proceeds from the Christie's sale, but rather Plaintiff is claiming to be the "***sole owner of the Painting***, and is entitled to the [entire] proceeds of its sale." (Complaint, at ¶ 62 (emphasis added).) Once again, there is no nonfrivolous basis in law or fact for such a bald-faced money grab.

and, instead, waited until the very end of fact discovery before seeking to inquire into what Mr. Adelson and the Coe-Kerr Gallery knew about the transaction at issue. Had Plaintiff not waited over two decades, Mr. Adelson may have remembered more details about the Painting and the transaction. (*See id*., **Exhibit H** at 20:18-21, 24:5-10.)

Similarly, for what one can only assume to be strategic reasons, Plaintiff and Plaintiff's Counsel made no efforts to contact Mr. Ramus in the 20 years prior to the filing of the Complaint. (*Id*., **Exhibit I** at 96:7-25, 120:7-15.) Apparently aware that Mr. Ramus would not falsely testify that the Coe-Kerr Gallery knew of his financial troubles in 1989 or were aware of any other "red flags" surrounding the transaction, Plaintiff and Plaintiff's Counsel specifically sought to avoid contacting Mr. Ramus. (*Id*., **Exhibit I** at 119:1-5 ("when I embarked on the 'Ice Storm' lawsuit, I really didn't think what my lawyer explained that is [*sic*] would be to involve you, but this is where I find myself").) This did not stop Plaintiff's Counsel from representing to the Court that additional time was needed in discovery to track down Mr. Ramus. (*Id*., **Exhibit E** at 2.) Indeed, when it became obvious to Plaintiff and Plaintiff's Counsel that they were likely to lose a motion for summary judgment, they used another lawyer to contact Mr. Ramus in the hopes that appealing to their prior friendship and Plaintiff's medical condition would convince Mr. Ramus to "corroborate" Plaintiff's allegations by "say[ing] that I lied to Coe Kerr" in order to "forestall Summary Judgment." (*Id*., **Exhibit I** at 38:10-39:9, 81:7-18, 96:3-25.) This sort of insinuation is entirely improper and indicative of the complete lack of merit to the lawsuit.

Plaintiff and his Counsel have known all along that there was no evidence, or reason to expect to find evidence, that the Coe-Kerr Gallery engaged in any fraud or wrongdoing when it acquired the Painting. Plaintiff did not diligently pursue his claim in the 20+ years since learning of the Painting's sale, but instead sat back and waited for the Painting to appear on the market again so that he could bring this claim, regardless of the cost to Hamada. "Rule 11 requires that an

attorney make a prefiling inquiry to establish reasonable ground to believe that further investigation and discovery will prove his case." *Abner Realty, Inc. v. Adm'r. of Gen. Servs Admin.*, No. 97 Civ. 3075, 1998 WL 410958, at *4 (S.D.N.Y. Jul. 22, 1998). As the Complaint itself makes clear, there is no dispute that (1) Mr. Ramus was an art merchant, (2) Plaintiff entrusted the Painting he co-owned with Mr. Ramus (and another) to Mr. Ramus, and (3) that the Painting was transferred for a "more valuable painting" (indeed, the fact that Mr. Ramus exchanged the Painting "plus some cash" would indicate to Coe-Kerr Gallery that Mr. Ramus was not in financial distress or that other "warning signs" existed). (Complaint ¶¶ 16, 23, & 36.)

Rather than accept the fact that Plaintiff has no claim to ownership of the Painting, Plaintiff and Plaintiff's counsel have consistently disputed the governing law (*see id.*, **Exhibit D** at 5:11-14) and hoped that continued discovery extensions would allow them to turn up something that could at least allow them to claim a factual dispute sufficient to defeat a summary judgment motion. When they could not find a single document or line of sworn testimony that would allow them to meet their burden, Plaintiff and Plaintiff's Counsel sought to manufacture such testimony (with the assistance of others) on the eve of the close of fact discovery. Such conduct should not be countenanced and, absent a withdrawal of the Complaint prior to Defendant's motion for summary judgment, sanctions should be imposed upon Plaintiff and Plaintiff's Counsel for certifying the allegations in the Complaint that lacked any evidentiary support (both before and after fact discovery).

## CONCLUSION

For all of the foregoing reasons, Hamada respectfully requests that Rule 11 sanctions be imposed upon Plaintiff and Plaintiff's Counsel, in the form of attorneys' fees incurred defending this baseless lawsuit and as the Court otherwise deems appropriate, in order to deter similar frivolous conduct in the future.

Dated: New York, New York
2016-November-11

**CAHILL PARTNERS LLP**

By:     */s/ Paul Cossu*
John R. Cahill
Paul Cossu
70 West 40th Street, 15th Floor
New York, NY 10018
212-719-4400

*Attorneys for
Defendant Kunitake Hamada*