UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REED GALIN,

        *Plaintiff*,

-against-

KUNITAKE HAMADA,

        *Defendant*.

ECF CASE

15-CV-6992 (JMF)

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S MOTION FOR
# SUMMARY JUDGMENT AND DISCOVERY SANCTIONS

Dated: 2017-January-27

**CAHILL PARTNERS LLP**

John R. Cahill
Paul Cossu
70 West 40th Street, 15th Floor
New York, NY 10018
(212) 719 – 4400

*Attorneys for Defendant
Kunitake Hamada*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

I.  Plaintiff's Claim that Hamada has Not Established His Purchase of the
    Painting is Both Factually Wrong and Irrelevant to the Issue Before this Court ......... 2

II. Admissible Evidence Must be
    Submitted in Opposition to a Summary Judgment Motion ........................................... 4

III. There is No Genuine Issue of Material Fact as to
     Whether the Entrustment Doctrine Applies to the Transaction at Issue ...................... 5

   A. "Good Faith" is Presumed in the Absence of Contrary Evidence ........................... 6

   B. Ramus Did Not Owe the Coe Kerr Gallery a Debt at the Time of the Transaction .... 6

   C. Plaintiff's Self-Serving Declaration Does Not Create a Genuine Issue of Material
      Fact as to Whether There Were Any Red Flags Surrounding the Painting's Purchase ... 7

IV. Plaintiff's Arguments Actually *Support* a Finding That His Claims are Barred by Laches .. 9

V.  Plaintiff Has No Defense to Failing to Comply with the Court's Discovery Order .............. 12

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*,
914 F. Supp. 2d 529 (S.D.N.Y. 2012) ........................................................................... 6

*Bakalar v. Vavra*,
819 F. Supp. 2d 293 (S.D.N.Y. 2011), *aff'd*, 500 Fed. Appx. 6 (2d Cir. 2012) ........................ 11

*BanxCorp v. Costco Wholesale Corp.*,
978 F. Supp. 2d 280 (S.D.N.Y. 2013) ........................................................................... 4

*Black River Ins. Co. v. New York State Loan & Trust Co.*,
73 N.Y. 282 (N.Y. 1878) ........................................................................................... 3

*DeWeerth v. Baldinger*,
836 F. 2d 103 (2d Cir. 1987) ................................................................................ 9, 10

*Dzanoucakis v. Chase Manhattan Bank, USA*,
No. 06-CV-5673, 2009 WL 910691 (E.D.N.Y. March 31, 2009) .................................... 4

*Financial Federal Credit, Inc. v. Crane Consultants, LLC*,
21 F. Supp. 3d 264 (W.D.N.Y. 2014) ........................................................................... 6

*Greek Orthodox Patriarchate of Jerusalem v. Christies, Inc.*,
No. 98 Civ. 7664, 1999 WL 673347 (S.D.N.Y. Aug. 30, 1999) ..................................... 11

*Hayes v. New York Dept. of Corrections*,
84 F.3d 614 (2d Cir. 1996) ........................................................................................ 3

*Hofferman v. Simmons*,
49 N.E.2d 523 (N.Y. 1943) ....................................................................................... 3

*Howley v. Town of Stratford*,
217 F.3d 141 (2d Cir. 2000) ...................................................................................... 4

*Joseph P. Carroll Ltd. v. Baker*,
889 F. Supp. 2d 593 (S.D.N.Y. 2012) ..................................................................... 8, 9

*Maurizio v. Goldsmith*,
84 F. Supp. 2d 455 (S.D.N.Y. 2000), *aff'd*, 230 F.3d 518 (2d Cir. 2000) ......................... 2

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997) .................................................................................... 4, 9

*Sanchez v. Trustees of the Univ. of Pennsylvania,*
No. 04 Civ. 1253, 2005 WL 94847 (S.D.N.Y. Jan. 18, 2004) ...................................................... 11

*Solomon Guggenheim Found v. Lubell,*
569 N.E. 2d 426 (N.Y. 1991) .............................................................................................. 9, 10

**Statutes**

FED. R. CIV. P. 56 .................................................................................................................. 1, 4

N.Y. U.C.C. § 1-201 ................................................................................................................. 7

N.Y. U.C.C. § 2-403 .............................................................................................................. 5, 6

Defendant[1] respectfully submits this Reply Memorandum of Law in support of his motion for summary judgment dismissing the Complaint, and for discovery sanctions against Plaintiff.

**PRELIMINARY STATEMENT**

Plaintiff's papers opposing Defendant's motion present no admissible evidence that casts doubt on Defendant's right to summary judgment and a sanctions award. The Court ruled that the only issue to be presently adjudicated in this case concerns "the transfer of the painting at issue from Mr. Ramus to the Coe-Kerr Gallery and application of the entrustment provision" (Cossu Decl., ECF No. 55, **Exhibit O**). There are no genuine issues of material fact: Plaintiff admits that he entrusted the Painting (of which, at best, he owned only a one-third share) to Ramus for sale. Plaintiff pled no facts and offers no evidence that the sale to the Coe Kerr Gallery was anything other than an ordinary course transaction in which the Coe Kerr Gallery bought from Ramus in good faith for a fair price without any "red flags" apparent to the Coe Kerr Gallery.

Nothing in the 18-page Declaration (the "Galin Decl.") spares his claims from summary judgment; it (1) mischaracterizes the documentary evidence, (2) contradicts Plaintiff's own deposition testimony, and (3) asserts unsupported, inadmissible hearsay statements. Worse, Plaintiff submits his speculation and hearsay not only to oppose the motion for summary judgment but to support a kind of shadow motion for summary judgment submitted in contravention of the Court's Order (ECF No. 62) prohibiting Plaintiff from seeking summary judgment. Plaintiff also fails to offer any credible evidence to (i) contradict his withholding of material documents until after the depositions had been concluded or (ii) justify the broad ranging discovery he sought during depositions despite the restrictions limiting discovery to the sole material issue presently at issue in this action, as per the Court's specific Order.

---

[1] This Reply Memorandum of Law adopts the defined terms used in Defendant's Initial Memorandum of Law, ECF No. 53 ("Def's Initial SJ Memo of Law").

## STATEMENT OF FACTS

The relevant facts are set forth in Def's R. 56.1 Stmt (ECF No. 54) and in Def's Initial SJ Memo of Law (ECF No. 53, Pgs. 3-7). To the extent any new facts were asserted by Plaintiff in his opposition papers, those facts are addressed below.

## ARGUMENT

### I. Plaintiff's Claim that Hamada has Not Established His Purchase of the Painting is Both Factually Wrong and Irrelevant to the Issue Before this Court

Plaintiff's principal argument[2] is that *he* is entitled to summary judgment because "Hamada has not shown that he ever owned [the Painting]." (Pltf's SJ Memo of Law, Pg. 3.) Not only is this argument procedurally improper, it is not supported by the facts or law.

First, the Court has limited the triable issue in this case to whether Plaintiff's interest in the Painting transferred to the Coe Kerr Gallery in 1989 pursuant to the UCC's "entrustment provision." (Cossu Decl., **Exhibit O**.) Plaintiff's speculation about Hamada's ownership does not bear on that issue.

Second, Plaintiff *has alleged*, and Hamada *has admitted*, that Hamada purchased the Painting. (*See* Complaint, ECF. No. 1, ¶ 3; Answer, ECF No. 24, ¶ 3.)[3] By virtue of this admitted allegation, there is no dispute as to Hamada's asserted ownership over the Painting. *See Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 464 (S.D.N.Y. 2000) ("Judicial admissions are 'formal concessions [that are] binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.'") (citations omitted), *aff'd*, 230 F.3d 518 (2d Cir. 2000). Thus, by asserting

---

[2] *See* Plaintiff's Memorandum of Law (ECF No. 64; "Pltf's SJ Memo of Law"), Pgs. 2-10.)

[3] Plaintiff not only fails to address ¶ 3 of the Complaint and Answer, he ignores the ***12 other affirmative defenses*** asserted in Hamada's Answer when claiming that entrustment is Hamada's "sole affirmative defense." (Pltf's SJ Memo of Law, Pg. 3.)

Hamada's purchase and consignment of the Painting (both admitted), Plaintiff has removed this fact "from contention" and abrogated the need, if any, for Hamada to prove his ownership.

Third, Plaintiff's unsupported assertion that "even we [*sic*] were to accept [Defendant's] argument that Galin has no rights, it does not automatically follow that Hamada wins and get the auction proceeds," is simply wrong as a matter of law. In fact, this is ***precisely*** what the law requires. Under well-settled New York law, a plaintiff with neither title nor right to possession has no right to take the property in dispute from the possession of a defendant no matter how defective the defendant's title may be. *See, e.g., Black River Ins. Co. v. New York State Loan & Trust Co.*, 73 N.Y. 282, 290 (N.Y. 1878); *Hofferman v. Simmons*, 49 N.E.2d 523, 526 (N.Y. 1943) ("plaintiff, seeking to take property out of the possession of the defendant, was bound to show title in himself.") (citations omitted). This is sound law and policy. For even if we were to assume that Hamada has not presented evidence that he purchased the Painting (which is not the case), Hamada's acknowledged possession and consignment of the Painting to Christie's entitles him to the sale proceeds vis-à-vis Plaintiff as Plaintiff lacks an interest in the Painting.

The remainder of Plaintiff's arguments in support of summary judgment either (i) misstate the nature of this action (claiming this is, in effect, an "interpleader" action (Pltf's SJ Memo of Law, Pg. 4)); (ii) substitute innuendo for evidence ("Why was it sent to Christie's? Hamada does not tell us" (*id*., Pg. 7)) and speculation ("the Court should also draw an adverse inference because of Hamada's failure to implead his seller" (*id*., Pg. 9)); or (iii) attempt to relitigate arguments from the motion to dismiss that have already been rejected by the Court ("Hamada does not say a word regarding the scope of his own due diligence prior to purchasing Ice Storm" (*id*., Pg. 9)).

**II.     Admissible Evidence Must be Submitted in Opposition to a Summary Judgment Motion**

FRCP 56 provides that affidavits submitted to oppose a motion for summary judgment must contain *admissible* evidence. *See* FED R. CIV. P. 56(e). "Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Testimony based on "information and belief" or "hearsay" is inadmissible. *Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000).

Galin's 18-page Declaration (attaching only one exhibit containing the invoices and attendant documents from Ramus's sale of the Painting and the Benson Painting) is in all material respects founded on (i) hearsay, (ii) statements contradicting Plaintiff's deposition testimony, and (iii) factual inaccuracies. "'[A] self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence.'" *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013) (citations omitted); *see also Dzanoucakis v. Chase Manhattan Bank, USA,* No. 06–CV–5673, 2009 WL 910691, at *8 (E.D.N.Y. Mar. 31, 2009) (where the "uncontroverted record clearly supports a [particular] finding," then "[p]laintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact").

Local Civil Rule 56.1(d) requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." U. S. Dist. Ct. Rules S. & E.D.N.Y., Civ. Rule 56.1(d). Plaintiff's Response to Def's R. 56.1 Stmt (ECF No. 65; "Pltf's Response to Local Rule 56.1 Stmt") fails to cite to any admissible evidence controverting the few paragraphs from Def's R. 56.1 Stmt that Plaintiff purports to dispute. With one exception (which is irrelevant for purposes of Defendant's motion), Pltf's Response to Local Rule 56.1 Stmt either

(a) fails to provide a "citation to evidence which would be admissible" (*see id.*, ¶¶ 9, 10, 16, and 17) or (b) cites to the Galin Decl. (*See id.*, ¶¶ 11, 12, 23, 24, and 28.) Because Plaintiff's Declaration and Response to Local Rule 56.1 Stmt fail to raise a genuine issue of material fact through admissible evidence, Hamada's motion for summary judgment should be granted.

III. **There is No Genuine Issue of Material Fact as to Whether the Entrustment Doctrine Applies to the Transaction at Issue**

Plaintiff, who does not genuinely dispute that the Painting was "entrusted" to Ramus under N.Y. U.C.C. § 2-403(3),[4] makes three arguments in opposition to Hamada's motion for summary judgment: (1) that the entrustment provision does not apply because "Ramus owed [the Coe Kerr Gallery] money at the time of the transaction" (Pltf's SJ Memo of Law, Pg. 14); (2) that "red flags" existed in the form of Ramus's financial difficulties and the prices of the Painting and the Benson Painting (*see id.*, Pgs. 14-15); and (3) that Hamada failed to satisfy his due diligence when purchasing the Painting. (*See id.*, Pg. 13.)[5] None of these arguments is supported by the facts in the record, admissible evidence, or the governing law.

A. **"Good Faith" is Presumed in the Absence of Contrary Evidence**

As an initial matter, Plaintiff asserts that the burden of proof rests entirely with Hamada to prove that the Coe Kerr Gallery was a buyer in the ordinary course of business. (*See* Pltf's SJ Memo of Law, Pg. 11.) That is not, however, a correct recitation of the law. To the contrary,

---

[4] "'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods has been such as to be larcenous under the criminal law." N.Y. U.C.C. § 2-403(3). In Pltf's Response to Local Rule 56.1 Stmt, Plaintiff disputes that the Painting was entrusted "as this is a conclusion of law" (Pltf's Response to Local Rule 56.1 Stmt, ¶ 9), but does not dispute any of the underlying facts which establish entrustment. (*See* Pltf's Response to Local Rule 56.1 Stmt, ¶¶ 4-8.)

[5] As this last argument has been heard and rejected by the Court on multiple occasions, Hamada respectfully refers the Court to his moving papers for the accurate summary of the applicable law. (*See* Def's Initial SJ Memo of Law, Pg. 16.)

courts recognize the inherent unfairness that Plaintiff is attempting to burden Hamada with, and have shifted the burden accordingly.

"Although [the buyer] bears the burden of proof…good faith is difficult to prove in the affirmative. It is similar to proving the negative—we were not dishonest. Accordingly, in the absence of allegations or evidence to the contrary, the Court will infer [the buyer's] good faith in its conduct." *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 914 F. Supp. 2d 529, 546 (S.D.N.Y. 2012) (citations omitted). This is particularly applicable, and why Plaintiff's burden to overcome the inference of good faith should be strictly applied, when (as here) Hamada is being asked to prove the good faith of a ***third-party buyer*** to a transaction that took place ***decades ago***. Having established that there was an "entrusting" of the Painting by Plaintiff to Ramus under N.Y. U.C.C. § 2-403(3), the burden shifts to Plaintiff to prove that there is evidence that the Coe Kerr Gallery knew that the sale of the Painting violated Plaintiff's rights. *See Arthur Glick Truck Sales, Inc.*, 914 F. Supp. 2d at 546; *see also Financial Federal Credit, Inc. v. Crane Consultants, LLC*, 21 F. Supp. 3d 264, 273 (W.D.N.Y. 2014) ("Only knowledge that the sale itself violates another person's rights (such as where the buyer knows that the seller does not hold legal title to the item being sold) prevents the buyer from being considered a [buyer in the ordinary course]"). Plaintiff offers no admissible evidence to show that the Coe Kerr Gallery knew, or even could have known, that the sale of the Painting could in any way violate Plaintiff's rights.

**B. Ramus Did Not Owe the Coe Kerr Gallery a Debt at the Time of the Transaction**

Plaintiff's opposition papers include a post-sale document (from no earlier than 1991) obtained from Ramus that notes the remaining amounts ***still owed to the Coe Kerr Gallery from Ramus's purchase of the Painting in 1989***. (Galin Decl., Exhibit A, Pg. 8.) Plaintiff claims that post-sale document, which clearly reflects an obligation arising out of the sale at issue itself, evidences a "a pre-existing debt" in a strained attempt to place the transaction outside the scope

of the entrustment doctrine. (A "buyer in the ordinary course" does not include a person that acquires goods "in total or partial satisfaction of a money debt." N.Y. U.C.C. § 1-201(b)(9)).

Plaintiff cites to no authority for his claim that an obligation arising as part of the sale transaction can constitute a pre-existing debt and we could locate none. Were there such a rule, all purchases permitting payments over time would be disqualified from "buyer in the ordinary course" protections. There is nothing in the U.C.C. to suggest that is the case and Plaintiff's arguments to the contrary should be rejected.[6]

### C. Plaintiff's Self-Serving Declaration Does Not Create a Genuine Issue of Material Fact as to Whether There Were Any Red Flags Surrounding the Painting's Purchase

Plaintiff's arguments concerning purported "red flags" are equally unsupported. Without a single citation to deposition testimony, Plaintiff states the following:

> There were numerous red flags regarding the knowledge in the art world at the time that Ramus was in financial difficulty. His deposition admits as much, and that he was desperately seeking to stay afloat at the time, lying as he needed in order to keep going. The art world in general, and Adelson in particular, ***surely knew*** about this high-flying drug-addicted dealer, and cannot be heard to deny it.

(Pltf's SJ Memo of Law, Pg. 15) (emphasis added.)

---

[6] In his Declaration, Plaintiff also asserts that Ramus, at some unspecified point, told him that the Painting's sale was "complicated" and "involved a dealer to whom he owed money (namely Coe-Kerr)." (Galin Decl. ¶ 7.) This is demonstrably false. Galin specifically testified that "Mr. Ramus I don't believe ever mentioned the Coe Kerr Gallery to me directly." (Declaration of John R. Cahill, dated 2017-January-26, **Exhibit A**, at Tr. 101:14-102:3.) "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). If anything, as Plaintiff has alleged in his Complaint (ECF. No. 1, ¶ 37) and as cited by the Court in the Opinion on the Motion to Dismiss (ECF No. 23, Pg. 1), it appears that Ramus later exchanged the more valuable Benson Painting to satisfy a debt, but Plaintiff cannot manufacture ***a new debt*** owed by the Coe Kerr Gallery (and one to which Ramus never testified to in his deposition) to avoid summary judgment. Plaintiff's claim that "Ramus told me that his financial problems really began in October 1987" (Galin Decl. ¶ 28), is similarly absent from the deposition transcripts of both Plaintiff and Ramus.

Plaintiff's entire opposition rests on such conclusory statements and speculation. What Plaintiff claims "the art world" "surely knew"—despite his claiming to know nothing of it—is neither evidentiary or worthy of serious consideration. Plaintiff offers not a single piece of admissible evidence to show that anyone (much less, the Coe Kerr Gallery) knew that "Ramus was in financial difficulty" prior to his indictment in 1995 (*six years after the transaction at issue*). Indeed, both Ramus and Adelson testified to the contrary. (*See* Def's Initial SJ Memo of Law, Pg. 14.) Plaintiff's own argument concedes that Ramus was "lying as he needed in order to keep going." (Pltf's SJ Memo of Law, Pg. 15.) Plaintiff has simply impugned both Ramus and Adelson as being "in cahoots" without any actual evidence or logical explanation as to how the Coe Kerr Gallery could know that Ramus was in financial difficulty at the time despite Ramus having agreed to pay ***additional money*** for the more-valuable Benson Painting.

With no true "red flags" to point to,[7] Plaintiff resorts to an unsupported claim that the price for the Benson Painting was not "honest in fact." (Pltf's SJ Memo of Law, Pg. 15.) The argument is unclear, first, because Plaintiff also argues that the price Ramus paid for the Painting was also too high (even though it sold at a public auction and, as such, was subject to competing bids from others who similarly valued the Painting). Plaintiff's sole evidentiary basis in support of this argument is the "invaluable resource" that is the Internet. (Galin Decl. ¶ 27.) Even if the Internet was a sufficient source of data, Plaintiff is not an expert in the value of works of fine art. His reliance on hearsay found on the Internet, without providing any documentary evidence (even from the Internet) to support his assertions, does not satisfy his obligation to submit

---

[7] Both Ramus and Adelson testified that the transaction at issue did not differ from others that both had previously conducted as art merchants (*see* Def's Initial SJ Memo of Law, Pg. 13), and there is no dispute that Ramus (i) owned an interest in the Painting and (ii) was authorized to sell the Painting (*see* Pltf's Response to Local Rule 56.1 Stmt, ECF No. 65, ¶¶ 5, 7). *See, e.g., Joseph P. Carroll Ltd. v. Baker*, 889 F. Supp. 2d 593, 604 (S.D.N.Y. 2012) (identifying the four triggers of "an added duty of inquiry").

admissible evidence. *See Raskin*, 125 F.3d at 66. Further, Plaintiff's conclusory statement that the $4,182,500 sale of a similarly sized Benson painting "is irrelevant" (Galin Decl. ¶ 35), highlights Plaintiff's refusal to acknowledge any evidence that does not support his narrative. (*See* Cossu Decl., **Exhibit S**.) Having (1) already admitted that the Benson Painting was "more valuable" than the Painting (Complaint, ECF No. 1, ¶ 36), and (2) failed to produce any admissible evidence that the Painting was not "more valuable" than the Benson Painting or that the sale price was "obviously below market," Plaintiff's new effort to create a genuine issue of material fact must be rejected. *See Joseph P. Carroll Ltd.*, 889 F. Supp. 2d at 604 (sale price of artwork not "obviously below market" and "would not have raised suspicion").

There is not one scintilla of evidence that the Coe Kerr Gallery engaged in any wrongdoing when it acquired the Painting. All parties involved testified, to the limited extent they could recall the long-ago transaction, that there was nothing out of the ordinary with the sale or any indication that Ramus was having financial difficulties. (*See* Def's Initial SJ Memo of Law, Pg. 14.) Plaintiff, his "best friend," did not know this, so how could another art dealer when Ramus took pains to conceal it? Because there is no evidence that the Coe Kerr Gallery knew that the sale of the Painting violated Plaintiff's rights, Hamada respectfully submits that (1) he has met any burden that he may have, and (2) to the extent there is any genuine issue of material fact as to whether he has "proven a negative," the cause is Plaintiff's inexcusable delay in taking any action with regard to the Painting, which warrants a finding of laches.

IV. **Plaintiff's Arguments Actually *Support* a Finding That His Claims are Barred by Laches**

Plaintiff's arguments against a finding of laches are similarly unavailing. Plaintiff's principal argument is based on a fundamental misunderstanding that Plaintiff has about the application of New York law to the facts of this case. Both the *DeWeerth* and *Lubell* cases concerned the ***actual theft*** of paintings from their owners (in the former during World War II and

in the latter by an erstwhile "mailroom employee"). *See DeWeerth v. Baldinger*, 836 F.2d 103, 105 (2d Cir. 1987); *Solomon Guggenheim Found. v. Lubell*, 569 N.E.2d 426, 427 (N.Y. 1991). In neither case was entrustment doctrine at issue. Here, Plaintiff admits that there was no theft of the Painting: he left the Painting with Ramus to sell; Ramus sold it, but failed to pay Plaintiff.

Laches applies because, if it could not be determined whether the Coe Kerr Gallery was a "buyer in the ordinary course of business" or a "good faith purchaser for value" (which Plaintiff's pleadings and the evidence he adduced suggest is the case), the uncertainty would be due to Plaintiff's decades-long delay in bringing a claim. With passage of time, those with knowledge are either deceased or no longer recollect the transaction at issue. As noted in Defendant's moving papers, Adelson (whom Galin claims was a "mentor" of Ramus (Galin Decl. ¶ 8)) testified that he did not recall the transfer of the Painting to the Coe Kerr Gallery at issue. (*See* Cossu Decl., **Exhibit H**, at Tr. 24:5-24:10.) Other principals of the Coe Kerr Gallery have either passed away or cannot be located. (*Id.*, **Exhibit H**, at Tr. 9:20-10:8.)

Further, the double standard to which Plaintiff would hold Hamada (but not himself), exemplifies why this Court should find that laches bars Plaintiff's claims. Plaintiff states:

> "Hamada's counsel also makes much over Galin's failure to notify the Art Loss Registry or report the loss to Interpol, or file a police report or post information on the internet. But Galin had no obligation to do so, and his not doing so means nothing."

(Pltf's SJ Memo of Law, Pg. 19.) However, Plaintiff also asserts that:

> "Galin had no duty of due diligence. Hamada's motion argues that, because of Galin's lack of due diligence in seeking the recovery of Ice Storm, witnesses have died or are unavailable. But that has it exactly backward. As we have said, Hamada, an art merchant, had his own due diligence obligation, about which there is no evidence whatever."

(*Id.*, Pgs. 17-18.) The above arguments cannot be reconciled. Conceding, for the purposes of argument only, that Hamada had a due diligence requirement, what would he have uncovered?

Only that (1) the Painting had been in the possession of Ramus some 25 years ago following his purchase of it from Christie's (and several years prior to his indictment), (2) the Painting had exchanged hands multiple times since then, and (3) over those 25 years, ***not a single person*** (including Galin) had ever asserted publicly that the Painting had been stolen or that they retained an ownership interest in the Painting. Christie's, also an art merchant, likewise uncovered nothing awry with the Painting and offered it for sale with a warranty of good title.

Laches is an equitable doctrine that ought to protect a good faith purchaser for value being hauled into court to prove the propriety of a long-ago transaction to which he was not a party, particularly where the delay in asserting the claim has resulted in faded memories and the death of relevant witnesses. *See, e.g., Greek Orthodox Patriarchate of Jerusalem v. Christie's, Inc.*, No. 98 Civ. 7664, 1999 WL 673347, at *10 (S.D.N.Y. Aug. 30, 1999) ("Because the [plaintiff's] delay in bringing this action renders defendants' case much more difficult to prove, the doctrine of laches bars this action."); *see also Sanchez v. Trustees of the Univ. of Pennsylvania*, No. 04 Civ. 1253, 2005 WL 94847, at *3 (S.D.N.Y. Jan. 18, 2004) (granting laches defense where the plaintiff "never wrote any letters or placed any telephone calls to any museums; never hired any investigator; never consulted any experts; never reported the theft; and never even conducted any research on where the collection might be found.").

The evidence establishes that Galin: (1) was aware of his (purported) claim (including the role of Adelson, the Coe Kerr director, in the sale), (2) inexcusably delayed in taking any action; and (3) prejudiced Hamada as a result. *See Bakalar v. Vavra*, 819 F. Supp. 2d 293, 303 (S.D.N.Y. 2011), *aff'd*, 500 Fed. Appx. 6 (2d Cir. 2012). Thus, Hamada has established all the elements necessary for a finding of laches and Plaintiff's claims should be dismissed on these grounds in addition to under the UCC's entrustment provision.

**V.     Plaintiff Has No Defense to Failing to Comply with the Court's Discovery Order**

Despite the uncontroverted evidence that (1) on the day of Ramus's deposition, Plaintiff's Counsel identified documents in his possession that he intended to introduce in the deposition although they had not been produced to Defendant's counsel (*see* Cossu Decl., **Exhibit Q**), and (2) Plaintiff's Counsel, despite due demand, withheld producing those documents until ***two days after*** the deposition and discovery had ended (*see id.*, **Exhibit R**), Plaintiff asserts that "nothing was withheld…and all documents had already been produced." (Pltf's SJ Memo of Law, Pg. 20.) That statement cannot be credited, even in an age of "alternative facts." Plaintiff had the documents and withheld them so that Defendant could not see or use them until it was too late.

Similarly, Plaintiff's claims that Plaintiff's California Counsel did not violate the Court's Order limiting discovery to the circumstances of the transaction with the Coe Kerr Gallery (which he admitted to not ever been shown by Plaintiff or Plaintiff's Counsel prior to the deposition), are equally without merit. (*See id.*, Pg. 21.) Strikingly, Plaintiff cites to a question in which Ramus was asked ***if he vacationed with Plaintiff*** (*see id.*, Pg. 22) to support this argument. Not only was ***this question*** (among ***many*** others) beyond the Court's Order, Plaintiff's California Counsel even conceded later on that his questions concerning where Ramus used to "party" were irrelevant to the ***entire*** case. (Ramus Tr. 111:9-18, ECF No. 51-4.) There can be no good faith dispute that such questioning was beyond the limitation on discovery and caused Defendant to incur the additional costs resulting from a needlessly prolonged deposition.

Plaintiff's remaining (though not necessarily relevant) assertion that Defendant did not have a right to object at Ramus's deposition has already been heard and rejected by this Court. (*See* Order, ECF No. 61.)[8] Thus, sanctions are appropriate against Plaintiff and his counsel.

---

[8] In keeping with the spirit of that Order, Defendant has not respond in kind to Plaintiff's many *ad hominem* attacks in his papers.

## CONCLUSION

For all of the foregoing reasons, Hamada respectfully requests that this Court grant his motion for summary judgment and for discovery sanctions and enter a judgment in accordance with such ruling.

Dated: New York, New York
       2017-January-27

**CAHILL PARTNERS LLP**

By:    */s/ John R. Cahill*
     John R. Cahill
     Paul Cossu
     70 West 40th Street, 15th Floor
     New York, NY 10018
     212-719-4400

     *Attorneys for*
     *Defendant Kunitake Hamada*